12750

TRAYWICK v. WANNAMAKER *ET AL.*

(*150* S. E., *655*)

148

150

152

*Mr. L. A. Hutson,* for appellant,

*Messrs. Lide and Felder, Brantly and Zeigler,* and *Wolfe and Berry,* for respondent.

October 23, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

For a statement of the purpose of this action, the history giving rise to the same, and the proceedings in the Court of Common Pleas for Orangeburg County, in which Court the action was begun, we adopt the agreed statement of the parties to the cause as contained in the transcript of record:

"This action was commenced by summons and complaint served March 25, 1926. It was brought by the respondent, Edna B. Traywick, against the appellant, Norman M. Wannamaker, L. A. Hutson, E. C. Mann and the respondent, Dr. C. A. Mobley, to require the appellant, Norman M. Wannamaker, to pay to the respondent, Dr. C. A. Mobley, a bill for professional services rendered the appellant, Norman M. Wannamaker, out of a judgment of seventeen hundred and fifty ($1,750) dollars that was obtained against the respondent, Edna B. Traywick, on account of injuries

received in an automobile collision, in the case of Norman M. Wannamaker, plaintiff, against Edna B. Traywick, defendant, March 16, 1925. Answer of the appellant, Norman M. Wannamaker, denies that he is indebted to Dr. C. A. Mobley, for services and hospital expenses or to the respondent, Edna B. Traywick. Answer of the respondent, Dr. C. A. Mobley, alleges that the appellant, Norman M. Wannamaker, and the respondent, Edna B. Traywick, are indebted to him for services and hospital expenses rendered appellant, Norman M. Wannamaker, and that the respondent, Edna B. Traywick, guaranteed the payment of the bill. June 30, 1926, Judge M. M. Mann issued an order, staying the issuing of an execution against the respondent, Edna B. Traywick, in the case of Norman M. Wannamaker, plaintiff, against Edna B. Traywick, defendant. September 4, 1926, Judge Mann issued an order in the case of Edna B. Traywick, against Norman M. Wannamaker, et al., modifying his order issued June 30, 1926, and allowed the respondent, Edna B. Traywick, to pay to the Clerk of Court, the amount of the judgment obtained against her in the case of Norman M. Wannamaker against Edna B. Traywick, ordered that one-half of the amount of the judgment be paid to the attorneys of the appellant, Norman M. Wannamaker, that the balance be held by the Clerk of Court until the adjudication of the rights of the parties and referred the case to Harry E. Moore, special referee, to take the testimony and report it, as taken, to the Court. March 9, 1928, the appellant, Norman M. Wannamaker, gave notice that he would petition the Court on the call of the case for trial, to determine his right to a homestead in the amount paid to the Clerk of Court, September 16, 1926, by the respondent, Edna B. Traywick, in the case of Norman M. Wannamaker, plaintiff, against Edna B. Traywick, defendant. The special referee took the testimony and reported it to the Court, on or about the 15th day of March, 1928. The case was heard by Judge M. M. Mann, June 9, 1928, at Orangeburg,

South Carolina, in the Court of Common Pleas, for the County of Orangeburg. After argument by counsel, the Court issued an order, refusing to determine the right of the appellant to a homestead or to pass upon the issues between the plaintiff and Dr. Mobley, and directed the Clerk of Court to pay to the respondent, Dr. C. A. Mobley, eight hundred ninety-four and 15/100 ($894.15) dollars, of the amount held by him."

From the said order of his Honor, Judge M. M. Mann, directing the Clerk of Court to pay to the defendant Dr. C. A. Mobley the amount of $894.15, out of the sum held by him, the defendant Norman M. Wannamaker has appealed to this Court, upon exceptions which raise the questions we shall consider.

The whole fight centers around the claim of Dr. Mobley for the treatment given and services rendered the appellant while in the Orangeburg Hospital. We have no hesitancy in stating that we fully agree with the position of counsel for the respondent Dr. Mobley, that Dr. Mobley should be paid for his services. Physicians and hospitals might well be designated chief of the State's most eminent benefactors, daily rendering immeasurable benefit to its citizens, and deserve to be compensated for such services. While this is true, it does not follow that the respondents are entitled under the law to the relief they seek in this case, and granted them under the order of the Circuit Judge, from which order the appellant has appealed to this Court.

In this action the plaintiff, Mrs. Edna Traywick, in her complaint alleges that the defendant Norman M. Wannamaker procured a judgment against her for the sum of $1,750, in a suit which he instituted against her on account of certain injuries he sustained when struck by Mrs. Traywick's automobile, driven by her young son; and alleges that Dr. C. A. Mobley, whom she made a defendant in the case at bar, as above stated, has a claim against Mr. Wanna-

maker for a certain sum (later shown to be $894.15) for services for surgical, medical, and hospital services rendered Mr. Wannamaker while he was suffering from the injuries he complained of on account of being struck by said automobile; and further alleged, on information and belief, that Dr. Mobley was making a claim against her (Mrs. Traywick) for his said bill, alleging, on information and belief, that Dr. Mobley claimed she was liable for said bill; and also alleged that the verdict which Mr. Wannamaker procured against her in the suit mentioned was "for all injuries, sufferings, expenses, surgical work, medical care and hospital bills for the wrongs and injuries referred to in the complaint in the last mentioned action," and alleged that Mr. Wannamaker should pay the said claim of Dr. Mobley out of the verdict and judgment entered against her in said case, but further alleged *"that she does not owe and is not indebted to the defendant, Dr. C. A. Mobley, in any amount whatsoever for said services and expenses to and for the said Norman M. Wannamaker,"* but she further alleged "that she is entitled in this action to a judgment requiring the defendant, Norman M. Wannamaker, to pay the defendant, Dr. C. A. Mobley, his bill for said services and expenses out of the judgment entered against her in the case of Norman M. Wannamaker, plaintiff, against Edna B. Traywick, defendant, and that she be allowed to pay said bill for services and expenses out of the said judgment, so that she will not be *harrassed* with a *multiplicity of suits in respect* thereto." In her testimony Mrs. Traywick stated that Mr. Wannamaker procured a judgment against her in the said suit, to which reference has been made, for the sum of $1,750; and, in referring to what transpired when Mr. Wannamaker was taken to the hospital, said: "I called up Mr. Zeigler and asked him to go to the hospital and get the status of the affairs and report to me. Mr. Zeigler reported to me later. I told Mr. Zeigler that I would not be

responsible until I knew what the bill would be. I did not authorize Mr. Zeigler to pay any definite amount."

It will be observed that Mrs. Traywick does not allege, and does not testify, that she has paid out any sum for or on account of Mr. Wannamaker to Dr. Mobley or any one else; does not allege or testify that she is liable on account of Mr. Wannamaker to Dr. Mobley for any sum, but, on the other hand, she alleges that she is not liable to Dr. Mobley for any sum whatsoever on account of the services rendered Mr. Wannamaker. It is contended by counsel for the respondents that Mr. Wannamaker assumed the collection of the hospital expenses in the suit for damages against Mrs. Traywick, along with the other items of damages sustained by him by reason of his injuries, and attention is called to the fact that it was alleged in the complaint in the damage suit "that the injuries complained of and for which Mrs. Traywick was liable by reason of the negligence of her agent, caused plaintiff to be confined in the hospital for several months," and it was alleged "as an element of his damages, expenses incurred by him by reason of his injuries." Attention is also called to the fact that the testimony in the case shows that Mr. Wannamaker was treated at the Orangeburg Hospital by Dr. Mobley, and remained in the hospital several months.

In the answer of Dr. Mobley to the complaint in the action at bar, it is alleged that Mr. Wannamaker was a patient at the Orangeburg Hospital and treated by Dr. Mobley, and that there is due and unpaid on account of the services rendered Mr. Wannamaker by the doctor, and for services and expenses at the said hospital, the sum of $894.15, which Mr. Wannamaker agreed to pay; and that, shortly after Mr. Wannamaker was brought to the hospital, Mrs. Traywick agreed to guarantee the payment to him, Dr. Mobley, for said services. But it is further alleged in the answer of Dr. Mobley that she (Mrs. Traywick) "has guaranteed the payment thereof and she is responsible to

this defendant, for, the amount thereof, and this defendant (Dr. Mobley) is not concerned as to how the differences between plaintiff (Mrs. Traywick) and the defendant, N. M. Wannamaker, may be adjusted, so long as he is paid the amount of indebtedness due him, as aforesaid." Dr. Mobley testified as to the services rendered Mr. Wannamaker following his said injury, and as to the amount of charges for such services; the amount being the same as set forth in his answer. He also testified that, before taking the case, that is, before taking Mr. Wannamaker into his charge for treatment, he had a conversation with Mrs. Traywick's attorney in regard to the treatment required, and that he (Dr. Mobley) told this attorney of Mrs. Traywick that he would not take the case until he knew who was going to pay for it, and that Mrs. Traywick's attorney, acting for Mrs. Traywick, told him (Dr. Mobley) that Mrs. Traywick would be responsible for the work. Dr. Mobley further stated in the course of his testimony that he did not send Mr. Wannamaker a bill for the services, for the reason that he was looking to Mrs. Traywick to see that the bill was paid; that he sent the bill to Mrs. Traywick, though the doctor also stated, "There is an *inherent* bill against Mr. Wannamaker until it is settled," and also stated in his testimony, "I remember telling him (Mr. Wannamaker) that I wouldn't send him the bill because Mr. Zeigler told me they would pay it. It is charged against her and if for any reason in this case, she isn't responsible, I am looking to Mr. Wannamaker for it. The question has not been settled as to whether they are responsible or not. It is an *inherent* bill against Mr. Wannamaker until it is settled."

The contention of Mr. Wannamaker, as shown by his answer and his testimony, is that Mrs. Traywick obligated to pay Dr. Mobley for the said services when he was first taken to the hospital, and before any service was rendered, and that he (Mr. Wannamaker) is under no obligation to pay the bill in question.

After consideration, his Honor, Judge Mann, refused to determine the right of the appellant to homestead, and also refused to pass upon the issues between Mrs. Traywick and Dr. Mobley, as to whether or not Mrs. Traywick was liable to the doctor for the claim in question. As to the other questions involved, his Honor stated his conclusion in the following language:

"Wannamaker assumed the collection of the hospital expenses in his suit for damages brought against Mrs. Traywick, along with other items of damages suffered by him on account of his injuries. From the allegations of the complaint and from the testimony introduced at the trial of this case, it is clear that his expenses and hospital treatment were urged as a basis of recovery and considered by the jury in fixing the amount of its verdict and was a part of such amount. Now, as Wannamaker assumed such collection from Mrs. Traywick and actually did collect damages over and above the amount sufficient to pay his hospital bill and for surgical treatment and used the Court as his instrument in compelling Mrs. Traywick to pay for these items, along with other items of damages, so much of the judgment recovered by him and collected as was necessary to pay the hospital bill and Dr. Mobley for his services was impressed with a trust, and a Court of equity is in duty bound to require these funds to be applied in accordance with the trust so impressed upon them."

His Honor, Judge Mann, thereupon ordered, adjudged, and decreed that the Clerk of Court, from the funds paid into his hands by Mrs. Traywick, on account of the judgment in the damage suit, pay to Dr. Mobley the said sum of $894.15, in settlement of his said bill for said services.

We are unable to agree to the conclusion reached by his Honor, Judge Mann. As we view the record in the case, the judgment procured in the damage suit could in no sense be impressed with a trust for the payment of the claim in

question, neither could the money paid into the clerk's hands in settlement of the judgment be impressed with a trust for said purpose. Also we do not think it can be assumed and concluded from the pleadings and evidence in the case that Mr. Wannamaker assumed the collection of the hospital expenses and other charges included in the bill of Dr. Mobley in his suit for damages brought against Mrs. Traywick. Further, in our opinion, the allegations contained in plaintiff's complaint are not sufficient for granting the relief sought by the plaintiff and granted her under the order of his Honor, Judge Mann, and the allegations contained in the answer of Dr. Mobley and the testimony in the case do not, in our opinion, furnish grounds for the relief granted.

As to the question of a trust, we may add that we fail to note the presence of any element or condition necessary to constitute a trust. There is no evidence of a direct and positive act of the parties, expressed by the parties in writing by deed or otherwise, declaring the purposes, terms, or provisions of a trust, naming the property involved, or showing that it was the intention of the parties to create a trust. Therefore there was no express trust. Neither can it be said that there was an implied trust. There was no instrument executed by the parties or words employed by them from which it could be inferred or implied that the parties had in mind creating a trust. Also there is no proof of a resulting trust. Such a trust cannot be said to be raised by implication or construction of law, or be presumed to exist or arise, out of the transaction touching the parties involved in this litigation; and there is no fact connected with the case which establishes, or tends to establish, a resulting trust. There is no proof that Wannamaker was placed in a fiduciary position with regard to the fund involved, or that he in any way practiced a fraud on the litigants involved in the case, or that he gained any advantage over them, which would tend to establish a trust relation.

In our opinion, the record does not support the contention that the sum of money in question was impressed with a trust.

It is therefore the judgment of this Court that the order issued by his Honor, the circuit Judge, from which the appellant has appealed to this Court, be, and the same is hereby, reversed, and the complaint in the action dismissed, without prejudice to the parties hereto to institute such actions, and set up such rights as they may be advised, as to any matter not adjudicated and determined in this case.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur in result.

MR. JUSTICE COTHRAN (concurring in result) : This is an action of most unusual character, and can be estimated only by a detailed statement of facts leading to the immediate controversy.

On September 18, 1924, the defendant in the present action, Wannamaker, brought an action in the Court of Common Pleas of Orangeburg County for damages on account of personal injuries sustained by him in a collision with an automobile which belonged to the plaintiff in this action, Mrs. Traywick, due, as alleged, to the negligence of her son who was driving it. He recovered a judgment against Mrs. Traywick for $1,750 actual damages, which upon appeal to this Court, was affirmed. *Wannamaker v. Traywick,* 136 S. C., 21, 134 S. E., 234, July 16, 1926.

While the appeal just referred to was pending, to wit, on March 25, 1926, the present action was instituted by Mrs. Traywick against Wannamaker and Dr. C. A. Mobley to require Wannamaker to pay to Dr. Mobley his bill for medical and surgical services and for hospital expenses, amounting to $894.15, out of the judgment which he had obtained against Mrs. Traywick (in the event of its affirmance by the Supreme Court). The action was based upon

the theory that the medical and hospital expenses, which Wannamaker was at least impliedly obligated to pay, were necessarily included in the judgment which he had recovered against Mrs. Traywick, and that as to them Wannamaker was a constructive trustee, and should be required to pay them out of said fund, to the relief of Mrs. Traywick, who might possibly be held liable to Dr. Mobley therefor.

On June 30, 1926, still prior to the termination of the appeal in the case of *Wannamaker v. Traywick,* his Honor, Judge Mann, passed an order in the present case, staying execution in the *Wannamaker v. Traywick case,* and on September 4, 1926, passed a further order modifying his order of June 30th, by which last order Mrs. Traywick was allowed to pay to the Clerk of Court the amount of the judgment in the case of *Wannamaker v. Traywick,* the order directing the clerk to pay one-half thereof to the attorneys of Wannamaker under their contract with him, and to hold the balance subject to an adjudication of the present controversy. Later the judgment was affirmed by this Court (150 S. E.—), and the clerk paid to the attorneys for Wannamaker one-half of the judgment and interest, $1,926.95, $963. 47, holding the balance, $963.48 to abide the result of the present controversy.

The defendant Wannamaker filed an answer denying that he owed Dr. Mobley for the medical and surgical services and the hospital expenses. The defendant Mobley filed an answer claiming that both Wannamaker and Mrs. Traywick were obligated for the bill, and that Mrs. Traywick personally guaranteed its payment.

The case was then referred to the Master to take and report the testimony, which duty he performed.

In the meantime the defendant Wannamaker filed a claim of homestead exemption, to the amount of $500, in the proceeds of the judgment in the hands of the clerk.

The case then came on to be heard before his Honor, Judge Mann, on June 9, 1928, at Orangeburg, upon the pleadings and testimony taken by the Master. His Honor filed an order (presumably at that term of Court though it is without date in the record) refusing to determine the right of Wannamaker to the homestead exemption claimed, or to pass upon the issues between Mrs. Traywick and Dr. Mobley, and directing the clerk to pay to Dr. Mobley $894.15, the amount of said bill, out of the balance remaining in his hands. From this order the defendant Wannamaker has appealed to this Court.

The concrete result of the litigation of both cases is that the defendant Wannamaker, who was seriously injured, having had his hip broken, suffered a permanent deformity in the shortening of one leg, and spent months in a hospital with his leg incased in plaster, receives as compensation the difference between one-half of the judgment, $963.48 and the bills for treatment, $894.15, $69.33  A result which should not be confirmed by this Court except under imperative compulsion.

The grounds upon which his Honor, Judge Mann, sustained the contention of Mrs. Traywick and ordered the payment of the claim of Dr. Mobley are very clearly expressed in his order as follows:

"In the suit for damages against Mrs. Edna I. Traywick, brought by Norman M. Wannamaker, he alleged that his injuries caused him to be confined in the hospital for several months, and, in addition to other elements of damages, alleged the expenses incurred. Likewise at the trial of the case testimony showed that he was treated at the Orangeburg Hospital by Dr. Mobley, and remained there for several months. Wannamaker assumed the collection of the hospital expenses in his suit for damages brought against Mrs. Traywick, along with other items of damages suffered by him on account of his injuries. From the allegations of the complaint, and from the testimony introduced at the trial of this

case, it is clear that his expenses and hospital treatment were urged as a basis of recovery, and considered by the jury in fixing the amount of its verdict, and was a part of such amount. Now, as Wannamaker assumed such collection from Mrs. Traywick, and actually did collect damages over and above the amount sufficient to pay his hospital bill and for surgical treatment, and used the Court as his instrument in compelling Mrs. Traywick to pay for these items, along with other items of damages, so much of the judgment recovered by him and collected as was necessary to pay the hospital bill and Dr. Mobley for his services was impressed with a trust, and a Court of Equity is in duty bound to require these funds to be applied in accordance with the trust so impressed upon them."

The appeal turns upon the soundness of these conclusions.

Whatever may be the conclusion as to the liability of Mrs. Traywick to Dr. Mobley, an issue which his Honor, Judge Mann, passed over, it is very clear that as between Dr. Mobley and Wannamaker there was no expectation on the part of either that Wannamaker should assume the payment of the bills for his treatment; certainly no express agreement on his part to do so. Dr. Mobley testified:

"I did not have any arrangements or conversation with Mrs. Traywick at the time Mr. Wannamaker was received at the hospital, but I did have a conversation with her attorney, Mr. M. E. Zeigler, that morning in regard to attention or treatment required by Mr. Wannamaker. He came to the hospital and I told him that I wouldn't take the case until I knew who was going to pay me for it. We had already given first aid and I didn't feel like subjecting myself to a bill unless I knew who was going to pay for it and would have to know who was responsible for the bill, and he told me that his client would be responsible for it. He told me that he was acting for Mrs. Traywick.  *  *  *  It was while we were giving him first aid, or right after we had done so, that I saw Mr. Zeigler. He came down to the hos-

pital. I wanted to know who was responsible for the bill. After receiving assurance from Mr. Zeigler, I kept Mr. Wannamaker at the hospital and gave him all the necessary attention possible. * * * I remember that Mr. Zeigler came that day and I had a conversation with him which was to the effect that I wasn't willing to go on with this case until I knew who was to pay for it. He said that he could tell me for his client that my bill would be paid. I did render a bill to Mrs. Traywick for $894.15 to cover the amount due me for services, care and attention to Mr. Wannamaker during the time that he was at the hospital. * * * I did not send Mr. Wannamaker a bill, as I was looking to Mrs. Traywick to see that it was paid. The case is for services rendered to Mr. Wannamaker and for which my understanding was that Mrs. Traywick would be responsible or that she would guarantee its payment. * * * I stated that I was looking to her for this amount, according to my understanding with Mr. Zeigler, and I am expecting her to pay it. * * * I sent the bill to Mrs. Traywick. * * * *I recall telling Mr. Wannamaker that I would not send him a bill.* * * * I remember telling him that I wouldn't send him the bill because Mr. Zeigler told me that they would pay it. It is charged against her."

It seems clear from this that Dr. Mobley accepted Mrs. Traywick as paymaster, and not Wannamaker, and, if so, he has no claim against Wannamaker.

But, assume that Wannamaker was the principal debtor in the case (and this result would follow as an implied obligation, in the absence of an express understanding or agreement on the part of Dr. Mobley to look only to Mrs. Traywick for the bill), we fail to find any support for the conclusion that Wannamaker became a trustee for Dr. Mobley in the judgment obtained by him against Mrs. Traywick, from the simple fact that he claimed the expenses of his treatment as an element of his damage. The fact that he made such claim in the damage suit would tend to sustain

a contention on the part of Dr. Mobley that Wannamaker was under a personal obligation to pay the bill; but how it amounts to more than this we do not comprehend. It certainly would be unjust to allow a plaintiff in a damage suit to recover upon certain items of expense, as elements of his damage, and then to repudiate his personal obligation to meet them. It is quite another thing to construe a simple obligation to pay into a trust.

From the very positive understanding of Dr. Mobley that Mrs. Traywick assumed payment of the necessary attention to Wannamaker, it is not improbable that that fact was brought out upon the trial, and may account for the very inadequate verdict, under the circumstances. We have no means of fathoming the mental operations of the jury, and there can be no definite conclusion that they included the hospital expenses in their verdict. It is hardly reasonable to suppose that they did, from its size; the facts certainly would not be susceptible of an assumption that they did.

It does not appear in the record that upon the trial of the damage suit there was other than a general reference to the medical and hospital service of Dr. Mobley; there is no evidence that the bill in question was before the jury; we do not see, therefore, how it can be affirmed as a fact that the jury included the specific amount of $894.15 in the verdict.

But, if we assume, as a fact, that the jury did include the bill in their verdict, the question still remains whether, under these circumstances, Wannamaker became a trustee of the fund realized from the judgment, out of which he was under an obligation to pay $894.15 of it to Dr. Mobley.

Trusts are classified by Mr. Perry, Perry' Trusts (7th Ed.), 17, as express, implied, resulting, and constructive. Express trusts are direct trusts generally created by instruments that point out directly and expressly the property, persons, and purposes of the trust. Implied trusts are such as the Courts imply *from the words of an instrument,* when no express trust is declared, but such words are used that

the Court infers or the instrument implies that it was the purpose or intention of the parties to create a trust. Resulting trusts are trusts that the Courts presume to arise *out of the transactions* of parties; that a trust was intended. Constructive trusts are trusts which arise when a person clothed with some fiduciary character, by fraud or otherwise, has gained some advantage to himself, or where equity will not permit him to retain it, though acquired without fraud.

There can be no pretense that the transaction in question falls under any one of the first three classes; the only possible contention could be that it fell under the last class, constructive trusts.

"Such trusts are called *constructive* trusts. They differ from other trusts in that they are not within the intention or contemplation of the parties at the time the contract is made from which they are construed by the Court, but they are thrust upon a party contrary to his intention and against his consent." 1 Perry Trusts (7th Ed.), 266.

"Constructive trusts are such as are raised in equity in respect of property which has been acquired by fraud, or where though acquired originally without fraud, it is against equity that it should be retained by him who holds it." 26 R. C. L., 1232.

It certainly cannot be said that Wannamaker acquired the money, the proceeds of the judgment, by fraud. Dr. Mobley could not, if he would, make this contention, for he actively assisted Wannamaker in acquiring it. Nor can it be said that it would be inequitable, as against Dr. Mobley, for Wannamaker to hold it after he had acquired it. The most that can be said is that Wannamaker has put himself in such a position that he cannot deny his responsibility to Dr. Mobley for the bill, which amounts to nothing more than a debt. In order that a constructive trust be declared, it must appear that the party against whom the trust is declared must either have wrongfully acquired the property in violation of a duty appertaining to it which he owed to another, or that he with-

holds it under similar conditions. Wannamaker acquired nothing that belonged in law or equity to Dr. Mobley; he had no interest whatever in it; and consequently there could be no unlawful withholding of it from him by Wannamaker.

The judgment of this Court is that the decree appealed from be reversed and the complaint dismissed. The case will be remanded to the Circuit Court, with direction that an order be passed requiring the Clerk of Court to pay to the defendant Wannamaker the balance of the fund in his hands.

MR. JUSTICE BLEASE concurs.