12817

SANDERS v. CHARLESTON CONSOL. RY. & LIGHTING CO.

(151 S. E., 438)

228

230

232

234

238

240

*Messrs. Logan & Grace,* for appellant,

*Mr. G. L. B. Rivers,* for respondent,

January 23, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

I cannot escape the conviction that the verdict in this case should not have been received and recorded.

It appears that according with a prevailing custom, as the Court was about to adjourn for the day, the case having been or was about to be submitted to the jury, it was agreed, and so ordered by the presiding Judge, that the jury upon agreement might disperse and bring into Court the next morning a sealed verdict. In a short while the jury announced to the bailiff in charge that they had agreed upon a verdict, and were allowed to disperse. The next morning the jury assembled in Court, and the clerk, after calling the roll, propounded the usual inquiry as to agreement, to which the foreman answered in the affirmative; no juror interposing objection to his statement. The foreman then handed the record, in a sealed envelope, to the clerk, who announced the verdict as in favor of the defendant. Immediately counsel for the plaintiff preferred a request that the jury be polled, which was granted. To each juror the clerk propounded the question as to his assent to the verdict as announced; all expressed their assent except the Juror W. M. Mitchell, Jr. The transcript shows that when he was asked the question, "Is this your verdict?" *"He replied that it was not his verdict."* His Honor then proceeded to interrogate the juror as to what he meant by saying that that was not his verdict, and had him sworn to undergo a further examination. The substance of his interrogation and examination was that in the jury room, as they proceeded to discuss the case, he announced his opinion

that the plaintiff "ought to get a small verdict," but that after the foreman put the question to the other jurors and it appeared that a three-fourths majority were in favor of a verdict for the defendant, "because a majority rules," he agreed thereto.

Thereupon his Honor ruled: "I think that is a sufficient agreement; you had a right to stand to your first opinion if you wished to; you may take your seat. I will receive the verdict."

The plaintiff moved for a new trial upon the ground of error in receiving the verdict under these circumstances and upon other grounds which need not be stated, and supported his motion with an affidavit of the dissenting juror which was replied to by an affidavit of the other jurors.

I think that the interrogation and examination of the juror and the affidavits received as to what had occurred in the jury room were all entirely irregular. There was a single and simple matter to be determined, whether at the moment of the publication the verdict represented the juror's conclusion which required nothing more than his statement, unless there should be made to appear some fact which would discredit it.

The rule in such matters is very clearly stated in 16 C. J., 1098: "Polling the jury is a practice whereby the jurors are asked individually whether they assented and *still assent* to the verdict."

It is further stated in the same work at the same page: "The jury may be polled after the verdict is given and before it is filed; and a motion or request to poll should be made as soon as the verdict is announced." (This rule appears to have been complied with by counsel for the plaintiff in the present instance.)

In the case of *Devereux v. Champion Cotton Press Company,* 14 S. C., 396, it was held that where a jury before dispersing assented to a verdict which was duly written and sealed up, but upon the reassembling of Court and

before publication the foreman openly stated that some of the jurors then dissented from the finding, it was held that such verdict should not have been received.

In the present case at the request of counsel for the plaintiff and exercising his discretion in the matter, his Honor, the presiding Judge, ordered the jury to be polled, and during that ceremony the Juror Mitchell stated that he did not assent to the verdict. If, as in the *Devereux case*, the Court should have acted upon the statement of the foreman of the jury to the effect that some of the jurors did not then assent to the verdict, the reason seems stronger that he should have acted upon the statement of the juror himself, which has not been impugned. In the *Devereux case* the Court referred to what is denominated the convenient practice above referred to, and, citing authorities, says: "These authorities establish the proposition that until a verdict has been published and recorded, it may be recalled and altered by the jury, and if it is made known to the Court, when it is proposed to render the verdict, that any one of the jurors does not *then* assent to it, such verdict cannot be received, but the record should be recommitted to the jury with directions to retire to their room until they have agreed   *   *   *."

The Court cites with approval the case of *Root v. Sherwood*, 6 Johns. (N. Y.), 68, 5 Am. Dec., 191, and says of the facts in that case: "Before the jury retired the parties agreed that the jury might deliver a sealed verdict; yet it was held that when the jury came into Court to deliver the sealed verdict either party might have the jury polled, and any of the jurors might dissent from the verdict to which they had previously agreed."

If the juror had agreed to the verdict the night before unconditionally, and not upon a mistaken conception of his duty, as appears to have actuated the juror in this case, he could have changed his mind overnight and when

the verdict was published registered his assent. His assent must appear at that time or the verdict is void.

There would be absolutely nothing to be accomplished by polling the jury if the dissent of a juror to the verdict when it was published is not to be regarder; his previous assent is in all instances presumed. See *State v. Harden*, 1 Bailey, 3; *State v. Daniel*, 77 S. C., 53, 57 S. E., 639; Note, 43 L. R. A., 79.

In the last-mentioned note the case of *Weeks v. Hart*, 24 Hun. (N. Y.), 181, is cited, in which it is stated that the Court decided that where a judgment is rendered in favor of the plaintiff upon the verdict of the jury which was entered after the jury was polled and one of them had stated that he was not satisfied with the verdict, the Court reversed the judgment and ordered a new trial, as such expression of dissent before the entry of the verdict upon the record destroyed the unanimity which was essential to make the verdict valid.

I think therefore that the judgment should be reversed and the case remanded for a new trial. A majority of the Court agreeing with this view, it is so ordered.

In justice to the presiding Judge, his remarks overruling the motion for new trial should be incorporated in the report of the case.

MR. JUSTICES BLEASE and STABLER and ACTING ASSOCIATE JUSTICE GRAYDON concur.

MR. JUSTICE CARTER dissents.

MR. CHIEF JUSTICE WATTS did not participate.

MR. JUSTICE BLEASE (concurring) : I agree with Mr. Justice Cothran that the judgment below will have to be reversed, because the verdict of the jury should not have been received and recorded.

We have no statutory regulations as to sealed verdicts. Perhaps we should have, since they are allowed so often, not only in civil but in many criminal cases. And they aid much in relieveing the arduous duties of jury service. To

reverse this case, because the supposed verdict of the jury was improperly received, is to encourage, I fear, the tampering with jurors who have been allowed to return a sealed verdict after they have agreed upon their verdict and have separated. On the other hand, to sustain the reception of the verdict in this case is to give a majority of a jury, and even the foreman alone, the right to announce that a verdict has been agreed upon when such is not the truth. The situation is bad, whatever the decision of this Court may be, and only tends to further establish how dangerous in the administration of law is the custom so generally now prevailing to allow sealed verdicts. Fortunately, for the cause of justice in South Carolina, it is not often that we have a juror like Mr. Mitchell, in this case, who made an affidavit that he had not agreed to the verdict, and made a counteraffidavit that he had agreed.

Frankly, with the view of trying to sustain the lower Court, I have made an exhaustive research of the authorities pertaining to the subject under consideration, and especially the decisions of our own Court. In addition to the authorities cited by Mr. Justice Cothran, I call attention to the views of well-known writers and cases decided by our Court.

As to a sealed verdict, this general principle is laid down in Ruling Case Law: "In this country, by way of substitute for a privy verdict, and to attain the same end of allowing the jury to separate after they have come to an agreement, a practice has been adopted in civil actions, and in cases of misdemeanors, at least, if not of all but capital crimes, of directing the jury, if they should agree during the adjournment of the Court, to sign and seal up their finding, and come in and affirm it at the next opening of the Court; but the verdict which determines the rights of the parties, and is admitted of record, and on which judgment is rendered, is the verdict received from the lips of the foreman in open Court." 27 R. C. L., 836.

In *Perry v. Mays,* 2 Bailey (18 S. C. L.), 354, the opinion of Judge Harper, approved by the Court, was to the effect that if one of the jurors, when the verdict agreed on is to be delivered in open Court, expresses his dissent to it, it is *no verdict;* although the jury had been permitted, with consent of the parties, to separate after they had agreed.

The decision in the case of *Perry v. Mays* was approved and followed in the case of *Devereux v. Champion Press Company,* 14 S. C., 396.

When the jury was polled, and juror Mitchell announced that the verdict attempted to be rendered was not his verdict, it was the duty of the Court, unless something appeared to show that a just verdict could not be rendered, to require the jury to return to their room and consider the case further.

"When the jury is polled, any juror may dissent from the verdict as announced, and in such case the jury may be sent back for further deliberation." 16 C. J., 1099.

To the same effect is the case of *Clyde v. Southern Public Utilities Company,* 109 S. C., 290, 96 S. E., 116. In that case, where a sealed verdict was permitted to be rendered, the jury announced during the night their agreement and were allowed to disperse. On the following morning, they came into Court, and when assembled, stated to the Judge that they did not understand how to write their verdict, and requested further instructions, which were given. They were sent back to their room and soon returned their verdict, which was received by the Court, and this action was approved by the Supreme Court.

The case which absolutely decides the proper course of procedure, in my opinion, is that of *Lagrone v. Timmerman,* 46 S. C., 372, 24 S. E., 290, 297. The appellants there had for their twelfth exception the following: "Because the presiding Judge erred in ordering or permitting the jury

to retire and resume the consideration of the case when they had once dispersed, thinking that they had agreed upon a verdict, when, in fact, they had not." In disposing of that exception, the great Judge, Hon. Henry McIver, speaking for this Court, only said, "the twelfth ground of appeal cannot be sustained." Evidently he regarded the question absolutely settled in this state by the former decisions.

I do not think the cases cited by Mr. Justice Carter support the conclusion he has reached, as will be noted.

*Martin v. Maverick,* 1 McCord (12 S. C. L.), 24, and *State v. Wise,* 7 Rich. L. (41 S. C. L.), 412, both held that a jury could not be polled but at the discretion of the Court. That question is not up here.

*Wannamaker v. Traywick,* 136 S. C., 21, 134 S. E., 234, and *State v. Cash,* 138 S. C., 167, 136 S. E., 222, decided that it is improper to impeach the integrity of a jury's verdict by affidavits of the jurors. That question is only incidentally involved here. I agree with Mr. Justice Cothran that the affidavits submitted as to the verdict of the jury were improperly received. The cases mentioned and the deceision in *State v. Long,* 93 S. C., 502, 77 S. E., 61, seems to me to be conclusive of that matter.

Mr. Justice Stabler and Mr. Acting Associate Justice Graydon concur.

Mr. Justice Carter (dissenting) : This action by the plaintiff, Jabez J. Sanders, Sr., against the defendant, Charleston Consolidated Railway & Lighting Company, a corporation, in the Court of Common Pleas for Charleston County, was commenced July 30, 1927, for recovery of damages against the defendant in the sum of $100,000, for personal injuries the plaintiff is alleged to have sustained on account of the negligence, carelessness, recklessness, and wantonness of the defendant, its agents and servants, in the particulars set forth in plaintiff's complaint, which will be incorporated in the report of the case. The defendant denied any

negligence on its part and alleged certain matters material to its defense, set forth in its answer, which will also be incorporated in the report of the case. The case was tried before Judge W. H. Townsend and a jury at the April, 1928, term of the Court of Common Pleas for Charleston County, and resulted in a verdict for the defendant. A motion for a new trial was made by the plaintiff, which motion the presiding Judge refused. From the order refusing the motion for a new trial and from the entry of judgment on the verdict, the plaintiff has appealed to this Court, imputing error to his Honor, the presiding Judge, in the particulars set forth in appellant's exceptions.

Exceptions 1, 2 and 3 raise a question as to the manner in which the verdict was reached. These exceptions are as follows:

"Exception 1. The presiding Judge erred because it appears from the record that the verdict for defendant was rendered by eleven jurors and not twelve and for that reason the Judge should have granted a mistrial or set aside the verdict.

"Exception 2. The presiding Judge erred because it appears from the statement of the juror, William Mitchell, Jr., taken in open Court that the verdict of the jury was not his verdict but was a verdict arrived at by a three-fourths vote, the error being that the presiding Judge should have set aside the verdict and granted a mistrial.

"Exception 3. The presiding Judge erred because it appears from the record both by the examination of the juror, William Mitchell, Jr., in open Court and by his affidavit that the verdict as rendered in favor of defendant is not the verdict of the juror Mitchell and a new trial should have been granted on this ground."

It appears from the record in the case that the jury were charged by the presiding Judge and retired to their room

for deliberation on the afternoon of Wednesday, April 11, 1928, with instructions from the Court to bring in a sealed verdict on the following morning. On the following morning, April the 12th, when the Court convened, the jury came into Court. The clerk of the Court, following the usual practice, called the name of each member of the jury, and each member was present and responded. Whereupon, the clerk asked the jury, "Gentlemen of the jury have you agreed upon a verdict?" They replied in the affirmative. The foreman of the jury then handed to the clerk a sealed envelope, containing the pleadings. The clerk then and there opened the envelope and published the verdict by reading the title of the case, and the verdict was as follows: "We find for the defendant. J. Fred Pieper, foreman, April 11, 1928." The clerk then said to the jury, "This is your verdict, so say you all," to which the jury assented. Following this counsel for the plaintiff moved that the jury be polled, which motion the Court granted, and the poll being taken, eleven jurors stated that the verdict as read was their verdict. The juror, William Mitchell, Jr., then for the first time during the proceedings stated that it was not his verdict, "as he had agreed to it because it was in accord with a three-fourths majority." Whereupon the following transpired:

"Court: What do you mean by that is not your verdict? A. I did not agree with them, I thought he ought to get a small verdict.

"Q. Did you say that you agreed before they came out? A. I agreed afterwards on three-fourths because majority rules, at the first starting off I did not agree.

"Q. You say at first you did not agree? A. No, sir.

"Q. Then they put it to a three-quarter vote and after that what did you do? A. I agreed.

"Q. After a three-quarter vote you agreed? A. Yes, sir.

"Q. You did not have to agree because it takes 12 to make a verdict but you did agree after the three-quarters agreed? A. Yes, sir.

"Mr. Logan: He said that is not his verdict.

"Court: I think where he has stated the facts and circumstances on which he agreed it became immaterial, he said he did agree after the three-quarters agreed, I will take his testimony on that."

The juror, W. M. Mitchell, Jr., was then sworn and testified as follows:

"Questions by the Court:

"Q. When you were asked if you agreed to the verdict this morning or not, state what the facts were, how the foreman came to sign the verdict? A. When we first went upstairs the foreman asked each and every man what would they do and they came to me and I said I think he ought to have a verdict.

"Q. Then what happened after that? A. They put it to a vote and when the majority won I stood with the rest of the crowd.

"Q. You then agreed to the verdict for the defendant? A. Yes, sir.

"Court: I think that is a sufficient agreement, you had a right to stand to your first opinion if you wished to, you may take your seat, I will receive the verdict."

The following affidavits were presented to the Court:

"AFFIDAVIT OF JURORS

"We, the undersigned jurors, who say in the case of Jabez J. Sanders, Jr., against the Charleston Consolidated Railway and Lighting Company, each being duly sworn to tell the truth, the whole truth and nothing but the truth, so help me God, each state on our oath that the Juror William Mitchell, Jr., who sat in this case agreed to the verdict for the defendant before the jury left the jury room. That the jury was

out for less than thirty (30) minutes and that Mitchell freely agreed to the verdict, without any compulsion.

"J. F. Pieper, Foreman.
"R. F. Fraser.
"Wm. H. Flint, Jr.
"William Mitchell, Jr.
"Clarence F. Rigby.
"J. Dougal Bissell.
"Alex. H. Pregnall.
"Harry W. Kingdon.
"Herbert H. Smyre.
"Francis A. Wayne.
"H. W. Crouch.
"John H. C. X Drew.
his
mark

"Witness: Wm. H. Dunkin, Clerk Ct.
"Sworn to before me this 12th April, 1928.
"Wm. H. Dunkin, Clerk Ct."

"AFFIDAVIT OF WILLIAM MITCHELL, JR.

"Personally appeared before me, William Mitchell, Jr., who being duly sworn says that he was one of the jurors impanelled for the trial of the above entitled case; that when the jury got into the jury room and my name was called, I stated I was for a verdict for the plaintiff. The foreman then said that he would put it to a vote and I still voted for a verdict and when I was called on in the Court by the Judge to state whether the verdict rendered was my verdict, I said 'No' and I still say that in my opinion the plaintiff should have had a verdict and that is not my verdict.

"William Mitchell, Jr.

"Sworn to before me this 12th day of April, A. D., 1928, Lucille B. Brogan, Notary Public, S. C. (Seal)."

Following the presiding Judge's refusal to declare a mistrial, requested by counsel for the plaintiff, counsel for plaintiff "made a motion for a new trial upon the grounds that after the statement of the juror, Mitchell, a mistrial should have been declared and also upon errors in the Judge's charge."

In passing upon this motion and refusing the same, his Honor, Judge Townsend, assigned as reasons for such refusal which strongly appeal to this Court, and because of the importance this Court attaches to the views expressed by Judge Townsend as to the deliberations of a jury and the manner of rendition of a verdict we quote his language in full, as follows:

"Court: Mr. Logan, I have given considerable thought to this case since the verdict was rendered and I think that the verdict is so clearly in accordance with the greater weight of the testimony that I am inclined to think now that that is the only reasonable conclusion to be drawn from the evidence on the question of proximate cause and that the interference of the boy Huggins in throwing the copper wire over the power wire and so bringing the electric current in contact with persons on the street was such a proximate cause as may have made any negligence on the part of the power company the remote cause, and I probably erred in not granting the defendant's motion for a directed verdict. Now the jury have found a verdict—made the same finding that I think considering all the evidence I would have made, and, therefore, I ought not to set it aside if it is just in my opinion unless there is clear legal error. A verdict if right should be final unless it appears there was not that unanimity required by law. Now in this case was there such unanimity? The statement of fact taken down by the stenographer and the testimony of Mr. Mitchell, the juror who dissented in open Court, show that when the jury went to their room there was a difference of opinion at that time between the jurors on the facts, and Mr. Mitchell stated that he then said,

when he first went to the room, that he thought the plaintiff ought to have a small verdict. There I differ from him because if he was entitled to any verdict he would have been entitled, to a considerable verdict on account of his injuries. That was his view which he presented to the others. Now after they took a vote, after they reached the vote of three-quarters of the jury being in favor of a verdict for the defendant he consented to such verdict believing that the majority should rule. He agreed to it after discussing the case, then after agreeing on the verdict he let the foreman sign it, seal it up and put it in his pocket and tell the constables at the door that they had agreed and thereupon they went to their homes under the instruction of the Court, until the next morning. The next morning when they came into Court, Mitchell did not give any indication of any dissension when the verdict was to be read and it was read and the jury was asked if that was their verdict which they assented to, whereupon Mr. Logan asked that the jury be polled and I allowed the jury to be polled and while Mr. Mitchell on the poll being taken of the verdict said it was not his verdict, upon further examination by the Court he stated he had agreed on the verdict before it was signed up and sealed and stated for, or as a reason for his agreement that he went over to the majority after a protest at first.

"Now when there was a difference of opinion on the part of the jury, that involved the surrender of the opinions of some of the jurors against others, or there would be no use in keeping a jury together and telling them they ought to agree. A juror ought not to give up his conscientious scruples to arrive at a verdict, although I have repeatedly told juries that it was their duty to carefully consider the views of the jurors to determine whether they could not agree and without a violation of their conscientious scruples they should agree. Now the juror stated the circumstances under which he did agree and I think the verdict agreed to was, and it is, supported by the evidence and I think I might

have granted the motion when the motion to direct a verdict was made at the conclusion of the testimony.

"Now the situation is just this: If I let this verdict stand and the case goes up to the Supreme Court the Court will have all the evidence before them and can determine if I am right in sustaining the verdict under the circumstances shown by the evidence. My reason for sustaining it is that the jury consented to it, it was sealed up and the jury were allowed to separate and he allowed the verdict to be read in the Court publicly without any indication of dissent, and that when the jury was polled he merely meant by stating that it was not his verdict that it did not represent what he thought about the case and now thought after he had been polled. He had agreed to it, however, before it was read, but on being polled he says now it is not his verdict. That comes pretty close to the *Devereux case* in 14 S. C., page 396. In that case a sealed verdict was rendered and the next morning the foreman delivered the sealed verdict when one of the jurors said it was not his verdict but he agreed not to oppose it to get out. The verdict was sustained by the Court and this was made the basis of the appeal. Now the Court reversed the judgment of the trial Court in that case on the ground that the juror although he had agreed to the verdict the night before when it was sealed up, still had a right to object at the time he did which was before it had been published and accepted in Court. Now the difference between that case and this case is that in that case the juror called the attention of the Court to the fact that he withdrew his agreement to the sealed verdict before the verdict was announced and published in Court. In this case the juror kept quiet and it was only when questioned as to whether it was his verdict or not that he undertook to change his agreement which was made before the verdict was published, and I think if a juror is allowed to change at that stage of the case in answer to a question 'is that your verdict or not?'

we will have a great many mistrials, and it will render a trial by jury very uncertain. I think that the circumstances as shown on the examination of the juror in this case distinguishes it from the *Devereux case*, and I do not feel that I am compelled to grant a new trial on that authority. I want the Supreme Court to pass on the circumstances in this case. A further reason why it should not be granted is because I think the verdict is right, and if so I should have directed a verdict when the motion to direct the verdict for the defendant was made, and reaching that conclusion after the showing made when the verdict was published here in Court I refuse the motion for a new trial and will let the whole thing go up to the Supreme Court. I regret that the plaintiff is a poor man but I think that the interest of justice requires that verdict should stand. If it is set aside, let the Supreme Court do it on appeal.

"Mr. Logan: Does your Honor think that the 7th request is correct?

"Court: I think so, taken in connection with the other requests.

"Mr. Logan: You cannot poll a verdict until the verdict is read.

"Court: I think his objection came too late. If that were not so, as soon as a verdict was reached some dissatisfied party would find out what the verdict was, and it might lead to corruption and I think the door should be shut. I will let the Supreme Court pass on it, I say it comes pretty close to the *Devereux case*, but I think it is distinguishable under the facts."

I consider it unnecessary to add anything to what Judge Townsend has said, except to state that in my opinion his Honor made a proper ruling in the case. As a matter of general information on the subject, attention is called to the following cases: *Martin v. Maverick*, 1 McCord, 24-28; *State v. Thomas Wise and Calvin Johnson*, 7 Rich. L., 412;

*Wannamaker v. Traywick,* 136 S. C., 21, 134 S. E., 234; and *State v. Cash,* 138 S. C., 167, 136 S. E., 222.

All of the other exceptions, 4, 5, 6, 7, and 8, presented by appellant, impute error to the presiding Judge in charging certain requests of the defendant.

I do not consider it necessary to enter into a discussion of these exceptions, but desire to state that I have given careful consideration to the same, and in my opinion the position of appellant is not well taken. When the charge in each instance of which the appellant complains, is considered in connection with the entire charge of his Honor, it will be seen that not only was the charge not prejudicial to the rights of the plaintiff but applicable to the issues in the case. These exceptions should not be sustained.

The respondent served notice to sustain the judgment of the Circuit Court upon certain additional grounds. Under my view of the case it is unnecessary to consider the grounds of this motion.

The exceptions should be overruled, and the judgment of this Court should be that the judgment of the Circuit Court be affirmed.