14554

*EX PARTE* PRINCE

STATE v. PRINCE *ET AL.*

(193 S. E., 429)

*Mr. C. Granville Wyche,* for petitioner.

*Messrs. Robert T. Ashmore, Price & Poag* and *Samuel R. Watt,* for the State.

October 27, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The petitioner, Lewis Prince, was brought before this Court in its original jurisdiction on a writ of habeas corpus, issued upon his verified petition and the exhibits attached thereto, in which he alleges that he is unlawfully restrained in the custody of the sheriff of Greenville County.

At the September term of the Court of General Sessions for Greenville County, 1937, an indictment was presented to the grand jury, and a true bill returned thereon, charging the petitioner, Lewis Prince, and Francis Drake, Otis Jamison, and George Clapp jointly in one count with common-law conspiracy. The defendants entered a plea of not guilty, following which a jury was drawn, duly impaneled and sworn, and thereafter they were duly tried. The jury found the defendants Jamison and Clapp guilty, but made no reference whatever in their verdict to the petitioner, or to the defendant Drake. Under these circumstances, the petitioner, Prince, contends that the verdict, silent as to him, is tantamount to his acquittal, and that he should, therefore, be discharged.

The trial of the case was entered upon on Wednesday, September 8, 1937. The presiding Judge delivered his charge to the jury on the following Saturday afternoon, and the jury retired to deliberate on their verdict about 5:30 p. m. of that day. After deliberating several hours, they returned to the Courtroom, about 10:45 o'clock p. m., and the foreman announced to the Court that the jury was unable to agree upon a verdict. The Court then instructed the jury upon the importance of their reaching a verdict, in the language usually employed under such circumstances; but, before they again retired to consider the case, Mr. Wyche, who represented the petitioner, requested and insistently urged the Court to charge the jury that, if they could agree upon a verdict as to the guilt or innocence of any one defendant, they should write a verdict as to that defendant, even though they should have a mistrial as to the other defendants. Upon the request of Mr. Wyche the jury was excused, and he was permitted to present to the Court his argument in detail on this point. Following his argument the jury returned, and was given this instruction by the Court: "I decided to instruct you thus: there are four defendants; I have already told you in order to convict you must find at least two of the defendants guilty; now, if all twelve of you gentlemen should determine any one of these defendants or any two of these defendants are not guilty, then write on the indictment we find the defendant or the defendants, call them by name, not guilty, that is if one or two; you can't do that if you find three not guilty; if you find three not guilty then you have got to find all four not guilty; but you can find one or two not guilty and that will leave the question of whether or not the other two were guilty. Now, you can't write a verdict of a mistrial; I don't want to confuse you; no one but the Court can order a mistrial. With that additional explanation that you, in order to convict, must find two guilty, but if you find one of the defendants or two of the defendants

not guilty you can at once write your verdict as to that, that we find, call the names, one or two of them as the case may be, not guilty, and then proceed with your deliberations as to the other two; and I hope you can reach a verdict as to all four."

It was agreed in this case that the jury would be allowed to bring in a sealed verdict. After explaining the procedure thereabout, the trial Judge instructed them that only if they reached a verdict as to all four defendants would the bailiff in charge permit them to disperse. They were further instructed, in the event of agreement, to report to the Court Monday morning at 10 o'clock.

The jury then retired and remained in the jury room in charge of a bailiff until Sunday morning at 5:45 o'clock, when the foreman notified the bailiff that the jury had agreed upon a verdict. Upon being so informed, the bailiff permitted the members of the jury to leave the jury room, and return to their homes. The indictment upon which the verdict was indorsed had been sealed in an envelope and placed in the possession of the foreman of the jury.

On Monday morning, September 13, 1937, at 10 o'clock, upon the reconvening of Court, the jury reassembled and occupied the jury box for the purpose of delivering the sealed verdict. The clerk inquired whether the jury had agreed upon a verdict, and the foreman replied that they had. The indictment, with the verdict indorsed thereon, sealed in an envelope, was handed by the foreman to the clerk, who broke the seal, removed the indictment therefrom, and published the verdict in open Court: "Guilty, George W. Clapp, O. P. Jamison," under which was signed the name of the foreman of the jury.

Immediately after the publication of the verdict, upon inquiry being made by the presiding Judge as to the two defendants Prince and Drake, the foreman stated that with reference to them it was a mistrial and that as to them no verdict had been reached by the jury. Thereupon, on the

Court's own motion, and under its order and direction, the jury was polled upon the question of their inability to agree upon a verdict as to the two defendants Lewis Prince and Francis Drake. The jury was likewise polled as to the defendants Clapp and Jamison.

In response to the questions propounded by the clerk to each juror as to his assent to the verdict as announced each of the jurors stated that he had not been able to reach a verdict as to the defendants, the petitioner, Lewis Prince and Francis Drake, but each answered that he had agreed upon the verdict of guilty as to George W. Clapp and Otis Jamison. The Court thereupon ordered a mistrial as to the petitioner, Lewis Prince, and Francis Drake, based upon the ground that the jury had been unable to agree on a verdict.

After the jury had been discharged, counsel for the petitioner, Prince, moved that he be discharged without delay. The Court overruled this motion and thereafter a bench warrant was issued under the order of the Court and the petitioner was arrested by the sheriff of Greenville County, and is now held in his custody.

In this proceeding we are called upon to review the propriety of the trial Judge's action in ordering a mistrial, and the issues arising therefrom.

It is agreed by counsel for the petitioner and counsel for the State that the questions raised by this habeas corpus proceeding shall be decided upon the merits.

The first question to be decided is, Was the sealed verdict as rendered by the jury, under the facts of this case, an acquittal of the defendant Lewis Prince?

The petitioner cites and relies strongly upon the case of *State v. Stone,* 87 S. C., 372, 69 S. E., 659, in support of the contention that the petitioner, who was not named in the verdict as having been found guilty, was, therefore, acquitted. An examination of that case, however, shows that the rule announced is not applicable here; the facts differ materially.

In *State v. Stone, supra,* five persons were indicted on a charge of larceny; after several hours of deliberation, the jury was instructed to return a sealed verdict, and be in Court the next morning at half past 9 o'clock. When the jury reassembled on the convening of the Court the following morning, they rendered a verdict finding three of the defendants guilty, with recommendation to mercy, but made no mention whatever of the other two defendants. The presiding Judge, without polling the jury of his own motion, and no request having been made therefor by any of the parties, refused to discharge the two as to whom the verdict was silent. Upon appeal being taken to this Court it was held that the verdict of the jury was unquestionably an acquittal of the defendants Morris Stone and Chesley Washington, these being the two defendants not named in . the verdict as returned by the jury, and that they should have been discharged, and should not have been required to undergo punishment.

The doctrine announced by the Court in that case undoubtedly is, that, where several defendants are indicted in the same indictment, and a verdict is rendered finding one or more guilty, without naming the others, those not named are presumed to be acquitted. It would seem that an acquittal would necessarily be implied under the circumstances suggested, nothing more appearing; but such presumption is totally destroyed when, as in the case at bar, the jury is polled after the publication of the verdict, and they all state that, while they are agreed as to the conviction of certain named defendants, they are unable to reach an agreement as to the guilt or innocence of those not actually named in the verdict.

It is urged for the petitioner that, when the jury has agreed upon a verdict, sealed it in an envelope, and then separate and mingle with the public, such verdict cannot be altered or changed except as to mere matters of form.

In the petitioner's brief are cited several cases from Georgia and from North Carolina, in support of this contention, including one ·from this State, but they are not in point.

We think the action of the trial Judge in polling the jury is fully supported by the case of *Sanders v. Charleston Consol. Ry. & Lighting Co.*, 154 S. C., 220, 151 S. E., 438. In that case, as in the case at bar, it was agreed that the jury might bring in a sealed verdict. A short while after retiring to their room the jury announced to the bailiff in charge that they had agreed upon a verdict, and they were then allowed to disperse. The next morning the jury reassembled in Court, and the clerk after calling the roll, propounded the usual inquiry as to agreement, to which the foreman answered in the affirmative; no juror interposing objection to his statement. The foreman then handed the verdict, in a sealed envelope, to the clerk, who announced the verdict as in favor of the defendant. Immediately counsel for the plaintiff requested that the jury be polled, which was granted. The clerk thereupon propounded to each juror the question as to his assent to the verdict as announced; each expressed his assent except one juror, who, when he was asked the question, "Is this your verdict?" replied that it was not his verdict. He was then interrogated by the presiding Judge with reference to the matter under oath, and it developed that he had previously assented to the verdict as published, but had changed his mind.

The presiding Judge held that a sufficient agreement had been shown, and received the verdict. Upon appeal being taken to this Court it was held that there was a single and simple matter to be determined, whether at the moment of the publication the verdict represented the juror's conclusion, which required nothing more than his statement, unless there should be made to appear some fact which would discredit him. The Court quoted with approval the following statement in 16 C. J., 1098: "Polling the jury is a practice

whereby the jurors are asked individually whether they assented and still assent to the verdict. * * * The jury may be polled after the verdict is given and before it is filed; and a motion or request to poll should be made as soon as the verdict is announced."

It is quite obvious that it would be an idle ceremony to poll the jury if the dissent of a juror to the verdict when it is published is to be disregarded; his previous assent, until such polling is accomplished, is in all instances presumed. *Sanders v. Charleston Consol. Ry. & Lighting Co., supra. State v. Harten,* 1 Bailey 3; *State v. Daniel,* 77 S. C., 53, 57 S. E., 639.

In *Perry v. Mays,* 2 Bailey (18 S. C. L.), 354, the opinion of Judge Harper, approved by the Court, was to the effect that, if one of the jurors, when the verdict agreed on is to be delivered in open Court, expresses his dissent to it, it is no verdict; although the jury had been permitted, with consent of the parties, to separate after they had agreed.

The decision in the case of *Perry v. Mays* was approved and followed in the case of *Devereux v. Champion Cotton Press Company,* 14 S. C., 396, and *Sanders v. Charleston Consol. Ry. & Lighting Co., supra.*

The converse of the proposition we have here is logically and legally sound. Let us suppose that the verdict of the jury, instead of omitting all reference to the petitioner, had specifically found him guilty, and thereafter, upon the jurors being polled, one or more jurors expressed dissent therefrom. Undoubtedly the verdict in such case would be declared void. Upon the same reasoning, the verdict in this case, in so far as it relates to the petitioner, can be given no effect as a verdict of acquittal.

The petitioner next raises the issue that he is entitled to a plea of former jeopardy.

It is argued that, after the jury has agreed upon a verdict, under the circumstances shown by the record, and permitted by the bailiff to separate and mingle with the

public, such jury is no longer a jury except for the purpose of delivering the verdict to the Court, and that under such circumstances the Court has no power to change or modify the verdict in any particular. It is further contended that it was the jury who agreed upon a mistrial, and not the Judge, and that there was no such manifest necessity which would warrant the Judge in ordering a mistrial because of the verbal statement of jurors after they had seperated and been allowed to mingle with the public.

It would seem that the authorities already cited largely dispose of these contentions. It cannot be gainsaid that it was the trial Judge who ordered the mistrial, which was done after the jury had deliberated for more than 12 hours, and after they had previously returned to the Courtroom with the statement that they could not agree. It is not surprising that the jury should have been somewhat confused in the instructions given them as to whether or not they might convict two or more of the defendants and fail to agree as to others. The trial Judge, before the jury was finally discharged, stated to them that such confusion, if it existed in their minds, was entirely understandable. His frank statement was, "It was my intention, gentlemen, if you had not agreed as to every defendant, not to come out until you reported to the Court but that was an unusual instruction, I never had seen it done before, and I never did it before, and I have no criticism of the jury one way or the other coming out without it, because I will admit it was somewhat confusing."

The petitioner lays much stress upon the case of *State v. Bilton,* 156 S. C., 324, 153 S. E., 269, 274. The facts in that case, however, are very different from the facts in the case at bar; that was a homicide case, and the question of a sealed verdict was not involved. The following excerpt taken from the *Bilton case* clearly shows the dissimilarity: "For the reasons already indicated—the failure to give the jury an opportunity to announce a verdict, if one had been agreed

upon, after it had appeared earlier that a verdict might be reached, the failure to ask them directly if they had reached an agreement, and, mainly, that the presiding Judge did not, in his statement correcting the minutes, give as his reason for ordering the mistrial the one of failure of the jury to agree—we must hold that the mistrial was not declared on account of the inability of the jury to agree on a verdict."

In the case at bar the presiding Judge ordered a mistrial solely on the ground of the inability of the jury to agree on a verdict, after hours of deliberation.

It is a rule of general recognition that one is in jeopardy when a legal jury is sworn and impaneled to try him, upon a valid indictment, in a competent Court, unless the jury before reaching a verdict be discharged with the prisoner's consent, or upon some ground of legal necessity, or the verdict, if rendered, be set aside according to law. In this State, the inability of the jury to agree upon a verdict is regarded as presenting a case of legal necessity, authorizing the discharge of the jury. *State v. Stephenson,* 54 S. C., 234, 32 S. E., 305, 307; *State v. Bilton, supra.* And see the numerous cases cited in the foregoing case.

It was held in the case of *State v. Stephenson, supra:* "If the Court discharge a jury for a cause not recognized as a legal one, the discretion exercised is not a sound legal discretion, and may be reviewed in this Court in a proper case. So, also, if the Court discharge a jury arbitrarily or capriciously, or without evidence or facts going to show a legal cause, this Court would hold the discharge unlawful. But, if the discharge is made for a cause recognized as legal, as the inability of the jury to agree, and there is evidence tending to show the existence of the cause, which satisfies the trial Judge of its existence, this Court cannot review the facts before the trial Judge, and hold his action illegal, because this Court may reach a different conclusion. It is only for

abuse of discretion, or the exercise of discretion in violation of established rules, that this Court would declare the discharge of a jury before verdict unlawful."

Upon a full consideration, we are convinced that the circumstances shown here were legally sufficient to warrant the order of mistrial. Nor do we find anything in the case indicating any abuse of discretion.

The case of *Town of Cheraw v. McLeod et al.,* 103 S. C., 417, 88 S. E., 6, fully supports our conclusion. In that case, which was a prosecution in the mayor's Court, against two defendants, the jurors, who were not placed in charge of an officer, left the jury room, separating on their own motion, leaving on the table a paper containing the following statement: "Being unable to agree in the case of C. L. McLeod, we have adjourned." The mayor ordered a mistrial, and on a subsequent trial the defendant L. H. McLeod moved that the case against him be dismissed, on the grounds that he had been tried and put in jeopardy, and that the action of the jury in dispersing at the former trial was tantamount to an acquittal. This motion was overruled and the trial resulted in his conviction. Upon appeal to the Circuit Court the judgment of the lower Court was affirmed, whereupon the defendants appealed to this Court. The opinion of this Court, written by former Chief Justice Watts, illuminates the issue. He said:

"The fourth exception raises the point: Could L. H. McLeod be put on trial again after the action of the jury at former trial, and was there error in not holding that the action of the jury resulted in an acquittal, he being once in jeopardy? This exception must be overruled. There was no action on the part of the Court that in any manner affected L. H. McLeod's rights. They were not discharged by the Court, State's counsel, or any person in authority without lawful cause. If they had been so discharged the defendant might have taken advantage of this and relied upon plea of former jeopardy, but in this case the jury dis-

charged themselves. They were guilty of misconduct and contempt of Court in escaping as they did, and could have been punished for contempt of Court, but the mayor could not have summoned and reassembled them for the purpose of making them consider again the case and reach a verdict. The law has been well settled in this State from the time of the case of *State v. McKee,* 1, Bailey, 651, 21 Am. Dec., 499, down to the present time. In this case it says:

" 'If the prisoner is found during the trial to be insane, or in a fit, * * * or if one of the jurors escape from his fellows, and go off,' etc.

"In this case the jury escaped from each other and all went off, left the courtroom, and when the mayor returned he found the jury gone and escaped, and nothing to indicate their whereabouts, and nothing to show what they had done, except the paper left by them. All of this operated to discharge the jury and to subject the defendants to a new trial, for the jury had practically escaped, left without lawful authority, and certainly none from the Court or any officer of the Court in charge of them, and certainly not by the consent, suggestion, or connivance of the prosecuting officer.

"It would be a travesty upon justice under such circumstances to sustain the plea of former jeopardy and acquit the prisoner."

To hold that the petitioner was acquitted under the facts disclosed by the record would be to ignore the obvious. The propositions contended for are at variance with the conclusions of sound judgment and common sense, on which, it is the boast of the law, all its principles are founded.

It follows that the petitioner's application for discharge must be denied.

Application denied.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

Mr. Justice Carter did not participate on account of illness.