[No. 31205. Department One. April 20, 1950.]

JOSEPH DEVONI, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Bernard A. Johnson, Assistant,* for appellant.

*Roy E. Jackson* and *Carl B. Luckerath,* for respondent.

BEALS, J.—During the month of November, 1943, Joseph Devoni was employed by Winslow Marine Railway and Shipbuilding Company, in their plant at Winslow, Washington, as a shipfitter and grinder. February 25, 1944, Devoni filed with the department of labor and industries a report of an injury (evidently occupational) which he had suffered the "Latter part of Nov. 1943." The report stated, in part:

"Patient grinds steel with a hand grindstone at the shipyard. Pt. has severe pain in chest, coughing, and difficulty in breathing. Condition believed caused by work."

[1] Reported in 217 P. (2d) 332.

A statement by Devoni's physician, Dr. J. W. Wilkinson, included the following: "Cause of cough is questionably occupational."

Devoni's claim was denied by the supervisor of industrial insurance, by order dated May 24, 1944, the supervisor being of the opinion that there was no proof that any injury had been sustained as the result of the employment, and that the claimant's physical condition was not due to an occupational disease, within the provisions of the appropriate section of the workmen's compensation act. No appeal was prosecuted from the order denying the claim.

July 11, 1944, Devoni applied for the reopening of his claim for the purpose of securing medical treatment. His physician, Dr. Wilkinson, stated that Devoni's condition had improved.

August 10, 1944, the department received a letter from Devoni requesting a rehearing before the joint board. Such a hearing was granted, "subject to proof that the Statute of Limitations has not operated against the claim."

A hearing was had before the board, testimony was taken, and, by order dated May 28, 1945, the joint board directed the supervisor to allow the claim. Following an examination of Devoni by Dr. C. E. Watts, the supervisor closed the claim, by order dated March 30, 1946, with a permanent partial disability award of three hundred sixty dollars, being ten per cent of the maximum allowance for unspecified injuries. No appeal was prosecuted from that order.

July 1, 1947, Devoni filed an application to reopen his claim, and, July 24th following, Dr. Watts again examined Devoni, reporting to the department that the applicant's condition was not the result of his employment and was not aggravated thereby. The supervisor, by order dated August 5, 1947, denied further consideration of the claim, whereupon Devoni again appealed to the joint board for a rehearing, which was granted. Several hearings were thereafter held, witnesses for the claimant and for the department testifying, and the board, by order dated October 11, 1948, sustained the order of the supervisor.

From this order of the joint board, Devoni appealed to the superior court for King county, where the case was called for trial June 6, 1949, before the court and a jury. After the close of the trial, the trial court ruled that the jury had rendered a verdict in favor of the plaintiff, and announced that judgment in plaintiff's favor would be entered accordingly. The defendant department then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, which motions were denied, and, thereafter, a formal judgment was signed and filed.

From the judgment entered pursuant to that verdict, which judgment reversed the order of the supervisor, dated August 5, 1947, and directed that plaintiff's industrial insurance claim be remanded to the defendant department, with instructions to reopen the claim and classify the plaintiff as being permanently and totally disabled as of July 1, 1947, and further awarded plaintiff judgment for his costs and an attorney's fee in the sum of four hundred dollars, the defendant department of labor and industries of the state of Washington has appealed.

Appellant makes the following assignment of errors:

"(1) The trial court erred in failing to send the jury back to the jury room to further deliberate upon their verdict.

"(2) The trial court erred in holding that the verdict was sufficient to find in favor of the respondent.

"(3) The trial court erred in denying appellant's motion for judgment notwithstanding the verdict of the jury or in the alternative for a new trial.

"(4) The court erred in entering judgment against the appellant."

Appellant's first and second assignments of error are based upon the following facts, disclosed by the record before us:

At the trial, after both parties had rested, the court charged the jury, which then retired to consider its verdict.

Rem. Rev. Stat., § 359 [P.P.C. § 99-75], reads as follows:

"When the verdict is returned into court either party may poll the jury, and if ten of the jurors answer that it is the

verdict said verdict shall stand. In case ten of the jurors do not answer in the affirmative the jury shall be returned to the jury-room for further deliberation."

From a partial statement of facts certified by the trial judge, it appears that the trial court, among other instructions (which are not included in the statement of facts), read to the jury its instruction No. 22, as follows:

" 'This is a civil action and requires only ten of you to agree upon a verdict. Your verdict in this cause will be in the form of an answer to the following interrogatories:

" 'INTERROGATORY No. 1.

" 'Was the decision of the Department of Labor and Industries correct in determining that plaintiff's condition had not become aggravated between the dates of April 10, 1946, when his claim was closed, and July 1, 1947, when he filed his application to reopen his claim? ANSWER: ........................

" 'Your answer to the above interrogatory will be "yes" or "no." If your answer is "yes," you need not answer the following interrogatory; if your answer is "no," you will then answer Interrogatory No. 2.

" 'INTERROGATORY No. 2.

" 'Is plaintiff totally disabled? ANSWER: ........................ (Yes or No.)

" 'Is plaintiff permanently partially disabled? ANSWER: ........................ (Yes or No.)

" 'If so, then state the amount of permanent partial disability in percentage for unspecified disabilities. ..............%.' "

From the statement, it appears that, after some time had elapsed, the trial court was advised that the jury had agreed upon a verdict, whereupon, under escort of the bailiff, the jury entered the courtroom and rendered a verdict (consisting of its answers to the interrogatories) indicating that the jury answered interrogatory No. 1 "no," and the first question of interrogatory No. 2 "yes." The verdict went no further. Counsel for appellant was present, and, pursuant to direction by the court, the clerk proceeded to poll the jury (we quote from the statement):

" . . . he asked Juror No. 1, Mrs. Anna Sessa, 'Is this your verdict?' to which Juror No. 1 answered, 'No.' The next question propounded to Juror No. 1 was, 'Is it the verdict of the jury?' to which she replied, 'Yes.' Jurors

No. 2 to 5 inclusive answered in the affirmative to both questions as they were propounded. Juror No. 6, Mr. John A. Gaertner, in answer to the first question said 'No.' He answered the second question in the affirmative. Juror No. 7, Mrs. Nora Russel, was asked, 'Is this your verdict?' and her answer was 'No.' She was then asked, 'Is it the verdict of the jury?' to which she replied, 'Yes.' Thereupon the court stated that three jurors having answered that the verdict was not their verdict, it was apparent that the jury had not properly reached a verdict. The foreman of the jury, Juror No. 8, Mrs. Helen Kilinski, replied to the court that she was sure that the jury had properly reached a verdict. The court then ascertained from an interrogation of the foreman that the following had transpired:

"Upon retiring and after the election of a foreman, the jury first addressed itself to Interrogatory No. 1 and voted thereon. In answer to Interrogatory No. 1, eleven of the jurors answered in the negative and one juror, Mrs. Anna Sessa, Juror No. 1, answered in the affirmative. The jury then proceeded to consider Interrogatory No. 2 in accordance with Instruction No. 22. The vote of the jury in answer to Interrogatory No. 2 was 10 to 2 in the affirmative, the two negative votes being cast by jurors Nos. 6 and 7. Upon being advised of the foregoing by the foreman of the jury, the court further interrogated Juror No. 1 who stated that she felt that she was bound by the majority vote in answer to Interrogatory No. 1 and that in considering Interrogatory No. 2, she decided that it should be answered in the affirmative and that when the jury voted on Interrogatory No. 2, she did vote in the affirmative and that the vote of the jury was 10 to 2 in the affirmative and that, therefore, the verdict of the jury was her verdict.

"Thereupon the court instructed the clerk to continue to poll the remaining jurors, all of whom answered both questions in the affirmative. The court then announced his conclusion that the required number of jurors had agreed upon a verdict in finding that the plaintiff was totally disabled, and the jury was thereupon dismissed with directions to report to the presiding judge for further assignment."

It is evident that, if a juror answered the first interrogatory in the affirmative, as juror No. 1, Mrs. Anna Sessa, did, the affirmative answer was definitely a statement of the juror's opinion that respondent was not entitled to a verdict in his favor in the action, as, if respondent's condition had

not become aggravated between April 10, 1946, when his claim was closed, and July 1, 1947, when he applied for reopening of his claim, the order of the joint board refusing to reopen the claim was correct, and Mrs. Sessa was right when she stated her position, in response to the question, "Is this your verdict?" by answering "no."

As disclosed by the statement of facts, jurors Nos. 6 and 7 answered the first question propounded to them during the poll of the jury, "Is this your verdict?" in the negative, both answering the question, "Is it the verdict of the jury?" in the affirmative.

The court then correctly stated its conclusion that no verdict had been reached by the jury.

Juror No. 8, Mrs. Helen Kilinski, who had been chosen foreman of the jury, addressed the court, as shown by the statement above quoted, and the court thereafter instructed the clerk to poll the remaining jurors, all of whom answered both questions in the affirmative.

The trial court then announced "that the required number of jurors had agreed upon a verdict in finding that the plaintiff was totally disabled," and discharged the jury. The verdict was received and filed, and, July 18, 1949, judgment was entered thereon in respondent's favor.

Of course, considering instruction No. 22 only, a juror might have answered interrogatory No. 2 to the effect that respondent was, at the time of the trial, totally (or partially) disabled, but that answer would not, of itself, necessarily indicate the juror's opinion that respondent's disability was the result of any injury or affliction suffered by him as the result of an industrial accident or occupational disease.

To eliminate confusion, the court's instruction No. 22 could well have told the jury that, if the answer of any juror to interrogatory No. 1 was "yes," that juror *should* not (instead of "need not") answer the next interrogatory.

It also appears that the answer of juror No. 1 to the court's further questions indicated her position while the jury was discussing the case in the jury room. Upon the poll of the jury, juror No. 1 definitely answered in the nega-

tive to the question, "Is this your verdict?" It does not appear that she ever changed her position in connection with her answer to this question. Her affirmative answer to the next question, "Is it the verdict of the jury?" was not relevant as to her position upon interrogatory No. 1.

Respondent argues that, from the statement of facts, it is apparent that juror No. 1 misunderstood the implication of the question, "Is this your verdict?" The statement of facts affords no basis for this contention.

The questions propounded by the trial court to the foreman of the jury and to juror No. 1 concerned matters which had occurred in the jury room. As disclosed by the quotation from the statement of facts, *supra,* juror No. 1 stated

". . . that she felt that she was bound by the majority vote in answer to Interrogatory No. 1 and that in considering Interrogatory No. 2, she decided that it should be answered in the affirmative and that when the jury voted on Interrogatory No. 2, she did vote in the affirmative and that the vote of the jury was 10 to 2 in the affirmative and that, therefore, the verdict of the jury was her verdict."

From a certified copy of the "verdict" returned by the jury (which was forwarded to this court, at our request, by the clerk of the superior court for King county), it appears that the verdict consisted merely of the jury's answers to the two interrogatories submitted by the court, interrogatory No. 1 being answered "no," and the first question contained in interrogatory No. 2 being answered "yes."

The opinion of the foreman of the jury that ten jurors had agreed upon a verdict was, of course, nowise binding upon the court, and the same is true of the opinion of juror No. 1 that the verdict presented to the court was "the verdict of the jury." This also is true as to the statement of juror No. 1 in answer to her interrogation by the court, *supra.* The controlling factor was the answers of the jurors when the jury was polled.

The record before us contains no instructions given to the jury by the trial court save instruction No. 22. The fact that juror No. 1, while in the jury room, answered interrogatory No. 2 in the affirmative, would not result in mak-

ing the verdict of the jury her verdict, unless she changed her opinion and agreed to the verdict as written.

In the case of *Coughlin v. Weeks,* 75 Wash. 568, 135 Pac. 649, this court held that, if, upon a poll of the jurors, it appeared that the verdict would not have the assent of ten jurors, they should be returned to the jury room for further deliberation. It appeared that, when the jury was polled, nine jurors answered in affirmance of the verdict, two in the negative, and one stated that it was only partially his verdict. After further deliberation, the jury again returned a verdict, and the jurors were polled, ten answering in affirmance of the verdict and two in the negative. In the course of the opinion, this court said:

"When the verdict was first presented to the court, the poll of the jury showed that it did not have the affirmance of the requisite number of jurors. It cannot then be said to be a verdict which was defective. It was in fact no verdict. By statute in this state, when it appears upon the poll of a jury that ten of the jurors do not answer in the affirmative, it is the duty of the court to cause them to return to the jury room for further deliberation."

In the case cited, the reconsideration of its verdict by the jury was upheld, notwithstanding the fact that the jury had returned a sealed verdict and had been allowed to separate, the polling of the jury occurring on the following morning, when the jury reassembled and presented its verdict.

In the case of *Bino v. Veenhuizen,* 141 Wash. 18, 250 Pac. 450, 49 A. L. R. 1297, we called attention to the fact that

". . . a juror, after agreeing to a verdict may, when the jury is polled and his name called, refuse to assent to the verdict although within the jury room he has assented."

The supreme court of South Carolina, in the case of *Sanders v. Charleston Consol. R. & Lighting Co.,* 154 S. C. 220, 151 S. E. 438, reversed a judgment entered by the trial court and remanded the case for a new trial, it appearing that, upon a poll of the jury, one juror, in answer to the

question, "Is this your verdict?" answered in the negative. Upon interrogation by the trial judge, the juror stated, in substance:

". . . that in the jury room, as they proceeded to discuss the case, he announced his opinion that the plaintiff 'ought to get a small verdict,' but that after the foreman put the question to the other jurors and it appeared that a three-fourths majority were in favor of a verdict for the defendant, 'because a majority rules,' he agreed thereto."

The trial court then received the verdict, and entered judgment thereon. On appeal, the supreme court reversed the judgment, holding that the juror interrogated had shown that he had not agreed to the verdict. In the course of the opinion, the court said:

"There would be absolutely nothing to be accomplished by polling the jury if the dissent of a juror to the verdict when it was published is not to be regarded; his previous assent is in all instances presumed. See *State v. Harden,* 1 Bailey, 3; *State v. Daniel,* 77 S. C., 53, 57 S. E., 639; Note, 43 L. R. A., 79."

██ The statement of facts does not support the trial court's conclusion that ten jurors agreed upon the verdict. That question must be decided upon the answers of the jurors when polled. Matters discussed or decided in the jury room are irrelevant. The clerk did not again poll juror No. 1, and her answer that the verdict was not her verdict must stand, as she never repudiated that answer, and, apparently,· never changed her position upon that matter. This being true, it follows that ten members of the jury never agreed upon a verdict.

The judgment entered by the trial court in respondent's favor is, accordingly, reversed, and the cause is remanded to the superior court, with instructions to grant appellant's motion for a new trial.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.

May 25, 1950. Petition for rehearing denied.