## 12033

### WANNAMAKER v. TRAYWICK

#### (134 S. E., 234)

1. TRIAL.—Instruction in action for injuries in automobile collision, defining negligence as "where you don't think," *held* proper, in view of following language showing that Court was distinguishing negligence from willfulness.

2. NEGLIGENCE.—Failure to exercise due care is "negligence," and, when proximate cause of injury, entitles injured person to damages.

3. TRIAL.—Party desiring Court to instruct jury more fully than was done must make request therefor, especially where Court inquired relative thereto.

4. NEW TRIAL.—Showing that juror copied 12 items of figures and divided total by 12, resulting in sum of verdict rendered, *held* insufficient to establish quotient verdict.

5. NEW TRIAL.—Party moving for new trial had burden of establishing that quotient verdict was rendered.

6. EVIDENCE.—Jurors are presumed to do their duty, and there is presumption that they have regarded their oaths.

Before DENNIS, J., Orangeburg, March, 1925. Affirmed.

Action by N. M. Wannamaker against Mrs. Edna Traywick. Judgment for plaintiff, and defendant appeals.

*Messrs. Brantley & Zeigler* and *Wolfe & Berry,* for appellant, cite: *Test of due care in sudden emergency:* 20 R. C. L., 134. *Quotient verdict improper:* 90 S. C., 462; 68 S. C., 96; 68 S. C., 86; 63 Am. Dec., 78, note; 134 A. S. R., 1061; 107 A. S. R., 841; 40 A. S. R., 452; 49 L. R. A. (N. S.), 415; Ann. Cas., 1917-C, 1222; 27 R. C. L., 847 and 896; Const. of 1895, Art. 1, Sec. 25; Const. of U. S., 14th Amendment.

*Messrs. L. A. Hutson* and *Ed. C. Mann,* for respondent, cite: *Judge's charge to be considered as a whole:* 106 S. C., 84; 90 S. E., 264; L. R. A., 1917-B, 215; 103 S. C., 343; 88 S. E., 26; 103 S. C., 238; 87 S. E., 1005. *Error in charge not brought to attention of Court not appealable:* 27 S. C., 268; 3 S. E., 301. *Negligence is question for jury under proper instruction:* 90 S. C., 25; 72 S. E., 558. *Affidavits charging misconduct of juror not considered unless served on juror before rising of Court:* 2 Bailey, 315. *Court will not consider happenings in jury room unless jury guilty of grave misconduct:* 90 S. C., 467; 73 S. E., 878; 54 S. C., 147; 31 S. E., 868; 21 S. C., 342; 4 Rich., 594; 2 N. & McC., 85; 2 Bailey, 576.

July 16, 1926.

The opinion of the Court was delivered by Mr. Justice Blease.

Action was brought by the plaintiff against the defendant in the Court of Common Pleas of Orangeburg County to recover actual and punitive damages on account of injuries alleged to have been received by the plaintiff in an automobile collision, it being charged that such injuries were caused by the negligence and willfulness of a son of the defendant, who was driving an automobile belonging to her. The case was tried before his Honor, Judge E. C. Dennis, and the jury returned a verdict in favor of the plaintiff for actual damages. The defendant, in her appeal to this Court, has two exceptions. The first exception complains that the trial

Judge in his charge to the jury used this language: "Negligence is where you don't think." Immediately following the sentence to which objection is made, the Judge used the following language:

"You act without thinking, carelessly, and willfully, or where thinking and knowing it, you go ahead and act anyway; knowing and thinking your duty you fail to do it. A person who does not think about what he is doing may be careless but not willful, but a person who knows his duty and goes ahead and acts in spite of that, that is willfulness."

The appellant contends that the presiding Judge told the jury, in effect, that the driver of the automobile, under the circumstances stated, was negligent if he did not think. Appellant is inclined to the opinion that the words quoted from the charge, to which objection has been made, were calculated to be understood by the jury in such a way as to prejudice her. The position is taken that the jury should have been given to understand that the opportunity to think must be taken into consideration, and that the Judge should have given a further and fuller charge upon the point in connection with the instructions he gave.

It is also urged that in case of a sudden emergency one is not required to think deliberately, but all that is required of him is that he do the best he can under the circumstances, and if his conduct measures up to that of the standard of the ordinarily prudent man under the circumstances, he has discharged his full duty in an emergency, even though he does not think.

While it is true that the Court did not use the words 1, 2 generally used in defining negligence, we are of the opinion that the error complained of is without merit. The language used by the Judge, following the words of the charge, which are questioned, indicate that the Judge was making a distinction between ordinary negligence and willfulness. A failure to exercise due care is

negligence, under the law. Such negligence, when the proximate cause of the injury received, entitles the one injured to actual damages for the injury. A conscious failure to observe due care has been repeatedly held by this Court to warrant a jury in giving not only actual damages, but punitive damages as well. When one, without thinking, just carelessly does an act which results in an injury to another, then ordinary negligence is established. On the other hand, when a person with the thought that his negligent act may produce an injury to another proceeds to do the act, such circumstances evidence a conscious failure to observe due care. Attorneys for the appellant cite section 111, p. 134, 20 R. C. L., as authority for the view they take. it is stated, in the authority mentioned, "The opportunity to think and act must be taken into consideration." The sentence quoted is taken from a discussion on the law of sudden peril or emergency. The same authority also states: "Negligence is the word ordinarily used in common-law terminology to express the foundation for civil liability for injury to person or property, when such injury is not the result of premeditation and formed intention." 20 R. C. L. p. 6, § 1. Again, in the succeeding section of the same work, this statement is made: "Every person in the conduct of his affairs is under a legal duty to act with care and forethought." For one to "act with care and forethought," one must think.

The record shows that the defendant submitted several requests, which were charged by the Judge.

It also discloses that, at the conclusion of his charge, the trial judge inquired of the attorneys of the parties if they wished the attention of the jury called to anything else, and that one of the attorneys for the appellant replied in the negative. While, as stated, we think there was no error in the charge, yet, if such there were, taking the charge as a whole, especially the requests to the appellant which were given, there was nothing in the charge to mislead the jury.

Furthermore, if the appellant desired the Court to instruct the jury more fully than was done, it was incumbent upon her to make a request to that end—especially so, when, as in this cause, the invitation to do so was extended by the Court.

The appellant moved for a new trial on the ground that the verdict of the jury was a "quotient verdict," the result of which was arrived at by each of the twelve jurors setting down the amount of damages which he thought the plaintiff-respondent should get, and then getting the total of these twelve amounts and taking the quotient thereof as the verdict. Judge Dennis refused this motion, and such refusal is made the ground of the second exception. So far as we are advised, the Circuit Judge gave no reasons for his action. We cannot say that he decided a quotient verdict to be legal. We know of no decision in this State which holds pointedly that a quotient verdict is void. In considering this appeal, it is not necessary, as we view the matter, to pass upon that particular question. But the writer of this opinion expresses for himself his impressions of the law touching that subject.

In the case of *Reeves v. Southern Railway Company*, 68 S. C., 96; 46 S. E., 545, the Circuit Judge refused to charge a request that a verdict of that kind was illegal. Upon appeal to this Court, the present Chief Justice, speaking for a unanimous Court, sustained the refusal to charge the request, and said:

"The request simply contained a warning to the jury, and even conceding that it was a sound proposition, there is nothing in the record showing that the appellant suffered prejudicial injury by reason of the refusal to so charge."

In *Carson v. Southern Railway Company*, 68 S. C., 86; 46 S. E., 535, a request for a similar charge was also refused by Hon. R. C. Watts, then Circuit Judge, now of this Court. On appeal, Mr. Chief Justice Pope, as the organ of this Court, disposed of the exception in this language:

"We think the Circuit Judge very properly refused to charge the quotient verdict would be illegal. Never suggest evil to a jury. Let them understand that 12 jurors must agree to a verdict, and that such verdict must be based upon the law and the evidence. It was within the Judge's discretion, at any rate."

While, as stated, there has been no direct holding, so far as we now know, that a quotient verdict is illegal, we are inclined to the view that the cause last cited tends to indicate that a verdict of that kind should not be allowed. This seems to be the law in other jurisdictions. 27 R. C. L., p. 847, § 20. It seems, however, from the *Carson* and *Reeves cases, supra,* that it is not proper that juries in our Courts should be charged not to find a quotient verdict, and certainly that it is within the discretion of the presiding Judge to refuse to so charge.

The general rule as to the subject of quotient verdicts seems to be this:

"In accordance with the general rule prohibiting chance verdicts, it is well settled that a verdict rendered in a civil action in pursuance of an agreement by the jurors to accept one-twelfth of the aggregate amount of their several estimates, without the assent of their judgment of such a sum as their verdict, is invalid. Such verdicts are regarded by the Courts in the same light as gambling verdicts, and will invariably be set aside, just as if the jury had thrown dice or resorted to any other method of gaming to determine the amount. In neither case is the sum arrived at the result of the deliberate judgment of the jury, but is the result of chance and self-imposed coercion, foreclosing deliberation and exchange of views. In such a case, every sum that goes to develop the verdict is a chance sum, save the sum that the juror himself sets down; and the verdict is not redeemed from being a chance verdict as to each juror, and, therefore, chance as to all, by the fact that each has contributed to it an element not of chance, and any more than

a dice throw was in fact controlled by certain intentional motion of the dice box. It is further objectionable for the reason that it places it in the power of one juror to make the amount unreasonably great or small, as he may think proper. It is a fraud by all the jurors on the parties and opens the field for further fraud by jurors on jurors. The rule is applicable to criminal as well as civil cases and for the same reasons; hence when the jury in a criminal case arrive at their verdict by agreeing that each juror shall set down on a slip of paper the term of imprisonment which he thought should be fixed, and dividing the aggregate of these figures by twelve, taking the quotient as their verdict, the verdict will be rendered void by reason of such misconduct.

"The impropriety of the practice of adding together the estimates of the jurors, dividing the aggregate by the number of jurors, and accepting the resultant quotient as the sum of the verdict, consists, not in the method nor the sum of the result, but in the prior agreement to be bound by it. If they previously agree to a particular mode of arriving at a verdict, and to abide by the contingent result at all events, without reserving to themselves the liberty of dissenting, such a proceeding would be improper; but if the means is adopted merely for the sake of arriving at a reasonable measure of damages or term of imprisonment, without binding the jurors by the result, it is not an objection to the verdict. The difficulties which juries experience in arriving at a conclusion in cases where the damages to be assessed are unliquidated, and to be measured by what may be gathered from the varying opinion of witnesses, have led the Courts to permit these verdicts to stand whenever the proof has satisfied them that the finding has subsequently been voted on and accepted by the jury as the legitimate expression of their deliberations. *Thus where one of the jurors of his own accord sets down the estimates of the others and ascertains the average sum and proposes the result as the amount of the verdict, which they assent to, it is*

*no ground for objection to the verdict.* (Italics ours.) The fact that a verdict is for an uneven amount does not of itself show that it is the result of a prior agreement to render a quotient verdict. Nor is a verdict vitiated by the mere fact alone that the jurors agreed among themselves to render a quotient verdict, if the verdict actually rendered is not in fact reached in that manner. So where the jury after deliberation modify an average verdict there is no ground for setting it aside. But if the substance of the agreement is kept it is immaterial that the final verdict varies slightly from the ascertained quotient, as where the amount was increased arbitrarily merely to make an even sum. Nor does it take the case out of the rule that enough months were added to a term of imprisonment ascertained by average, to make an even number of years, because it was not customary to return verdicts for fractional parts of a year." 27 R. C. L., pages 847–850, §§ 20, 21.

Conceding the law to be as stated in Ruling Case 4    Law, and presuming that the Circuit Judge so held, let us examine into the showing made by the appellant on her motion for a new trial.

At the hearing of that motion, certain affidavits were submitted by the appellant. One of these by Mr. W. C. Wolfe, of counsel for appellant, stated in substance the following: That within ten minutes after the verdict was rendered, Mr. Wolfe, Mr. M. E. Zeigler, another attorney for the appellant, and Mr. T. H. Tatum walked into the room where the jury in this cause had been deliberating; that he saw lying on top of a desk in that room a sheet of paper, hereinafter referred to as Exhibit A, of which Mr. Zeigler took possession. In an affidavit submitted by Mr. Zeigler, he stated that the sheet of paper found in the jury room was exhibited by him to Mr. J. T. Owen.

Mr. Cliff Langford, the Court stenographer, made an affidavit to the effect that Exhibit A was one of a number of sheets of paper of similar make and design, contained in

a written pad, which he used in his work as stenographer; that the affiant kept his books and records of testimony in the jury room; that on the back of the sheet marked Exhibit A were stenographic notes made by the affiant, as stenographer of the Court at St. Matthews. Mr. J. T. Owen, partner in business of juror Ulmer, swore that Exhibit A was in the handwriting of Mr. Ulmer. Exhibit A contained twelve items of figures, ranging from 1,000 to 3,000, placed in column form. Beneath this column of figures were the figures 21,000, total of the figures in the column; this last sum had been divided by 12, giving as the result the qoutient of 1,750. The verdict was for $1,750. The appellant claims that the showing made by her before the lower Court was sufficient to establish the fact that the verdict rendered by the jury in the cause was a quotient verdict.

Presuming that the holding of the Circuit Judge was to the effect that there was not sufficient evidence before him to establish the fact that the verdict was a quotient verdict, we feel that his decision should not be reversed unless it clearly appears to this Court that he was wrong in reaching his conclusions. Clearly, the burden of establishing the fact that a quotient verdict had been rendered was upon the appellant as movant in that matter. The character of the gentlemen who made the affidavits in support of the motion for a new trial, is such as to make certain the fact that the statements in the affidavits were true. Indeed, the respondent does not seem to question any statement in either of the affidavits, and the record shows such was his position in the lower Court. Is the proof convincing that the verdict returned was a quotient verdict?

In Virginia, where, as it seems, the Courts hold that quotient verdicts are void, a case very much like this was decided by the Supreme Court of that State. *Washington Luna Park Co. v. Goodrich,* 110 Va., 692; 66 S. E., 977. In that cause, soon after the jury vacated the room where they had been deliberating, scraps of paper were found in

the room and these scraps contained the names of the jury-men and certain amounts opposite their names. The aggregate of these several amounts divided by 12 produced a quotient of about $2,300. One of the counsel engaged in the trial of the case submitted an affidavit, detailing a conversation between himself and one of the jurors, to the effect that the verdict was reached by an understanding that each of the jury would write upon a strip of paper the amount he was willing to give the plaintiff, upon the understanding that these amounts would be added together and the aggregate amount divided by twelve; that in pursuance of this agreement, an odd amount was arrived at, whereupon one of the jurors suggested that it would look strange to render a verdict for that particular sum, and upon suggestion of another juror the verdict was fixed at $2,000. The Appellate Court held that, in general, affidavits of jurors were admissible to impeach their verdict. It also decided that the affidavits before the Court were not strong enough to establish the fact that a quotient verdict had been rendered.

The facts in the case at bar do not appear to us to be as strong as those in the Virginia case. Here the handwriting of only one juror was found. The name of no juror appears opposite any amount set down on the paper found in the jury room. True, the verdict corresponds exactly with the quotient shown on the sheet of paper, but we do not think this alone is sufficient to show that the jury as a whole, or that any part of the panel, agreed to a quotient verdict. It may be that the jurors had discussed the case and it was found that all of them were favorable to a verdict for the plaintiff, and that the only difference was in the amount for which the verdict should be found; that thereupon juror Ulmer, of his own accord, for the purpose of securing a fair and honest verdict under the circumstances, put down the figures on the piece of paper; that thereafter he may have called the attention of his fellow

members to what he had done, and after discussion the amount of $1,750 was agreed upon as a verdict.

Jurors are presumed to do their duty, and there is a presumption that they have regarded their oaths. The Court would not be justified, except upon a clear showing, to hold contrary to these presumptions. If the verdict was rendered in pursuance of the plan outlined by us hereinbefore, it is not a quotient verdict and is not illegal, as is distinctly held in the authority cited—Ruling Case Law. There, it is expressly stated:

"Thus where one of the jurors of his own accord sets down the estimates of the others and ascertains the average sum and proposes the result as the amount of the verdict, which they assent to, it is no ground for objection to the verdict."

It is our opinion that the appellant has failed to show that the Circuit Judge committed error in overruling the motion for a new trial.

The judgment of this Court is that the judgment of the Court of Common Pleas of Orangeburg County, in this cause, be, and the same is hereby, affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and STABLER and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. CHIEF JUSTICE GARY did not participate.