**SOUTH CAROLINA STATE PORTS AUTHORITY, Plaintiff,**

v.

**BOOZ–ALLEN & HAMILTON, INC., Defendant.**

**Civ. A. No. 84–0348.**

United States District Court, District of Columbia.

Dec. 23, 1987.

William H. Vaughan, Jr., Vaughan, Robson, Barnwell & Lawrence, Charleston, S.C., Edward J. Sheppard, Schmeltzer, Aptaker & Sheppard, P.C., Wash., D.C., for plaintiff.

William O. Bittman, Jack N. Goodman, Pierson, Ball & Dowd, Wash., D.C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Defendant Booz–Allen & Hamilton, Inc. ("Booz–Allen") moves for summary judgment on an issue expressly left unresolved by the United States Court of Appeals for the District of Columbia in remanding this case: whether the first amendment protects defendant from this suit for negligent preparation of a report that allegedly caused economic injury to plaintiff, a state governmental agency. For the reasons set forth below, the Court finds that the negligence standard set forth by the South Carolina Supreme Court in this case adequately protects the first amendment interests of defendant and summary judgment is denied.

### I. Factual Background

Booz–Allen, a large management consulting firm, was retained for $75,000 in the

fall of 1983 by the Georgia Ports Authority ("GPA") to prepare an independent comparative analysis of the Ports of Savannah, Georgia, and Charleston, South Carolina. Plaintiff South Carolina State Ports Authority ("SCSPA") is the governmental agency of the State of South Carolina responsible for operating the Port of Charleston.

The report, entitled "An Economic Evaluation of Two Key South Atlantic Ports in the Major U.S. Trade Routes with Europe, Far East, Middle East, Mediterranean," was written by Booz–Allen's Transportation Consulting Division in Bethesda, Maryland, under the direction of Booz–Allen Vice President Leo J. Donovan and Dr. John C. Martin, the project manager for the report.

The objectives of the 80–page report were to compare and assess the "current potential" of the Port of Charleston and the Port of Savannah and "to identify and evaluate the key operational characteristics of the two South Atlantic ports." In late 1983, GPA distributed the report to thirteen existing and potential customers of the Charleston and Savannah Ports. Booz–Allen itself also provided the report to at least one such customer.

Alleging that the Booz–Allen report contained misleading, false, and damaging information, SCSPA and two union plaintiffs filed this action against Booz–Allen[1] on February 4, 1984 for negligence, libel, and tortious interference with contract. After three years of proceedings in this Court, the United States Court of Appeals for the District of Columbia Circuit, and the Supreme Court of South Carolina,[2] the scope of this case has been narrowed such that only SCSPA remains as a plaintiff and is now proceeding on one count of negligence, with a request for compensatory and punitive damages, and injunctive relief.[3]

In remanding this case, the Court of Appeals cleared plaintiff's path to trial except for one potential obstacle. In a footnote, the Court of Appeals stated: "We express no opinion on the parting argument [Booz–Allen] raised in its brief that 'extending general negligence liability' to 'the conduct at issue [which] consisted entirely of speech' would collide with the first amendment. ... That issue remains open for district court consideration on remand." *South Carolina State Ports Authority v. Booz–Allen & Hamilton, Inc.*, Nos. 84–5808, 84–5873, slip op. at n. * (D.C.Cir. Aug. 5, 1986) [795 F.2d 1085 (Table)]. Not surprisingly, defendant has accepted the Court of Appeals' invitation to pursue this issue and now moves for summary judgment.

## II. Analysis

While the array of first amendment and defamation cases involving non-political speech provide valuable guidance on the issue presented in this case, no court has ever directly addressed the question of whether a plaintiff may pursue damages from speech under a negligence theory when the same plaintiff could not so proceed on the basis of libel. The absence of an analogous case is explained in part by the odd posture of this case—plaintiff here is a governmental entity and under long-standing principles of libel law would not

---

1. SCSPA filed a separate action against the Georgia Ports Authority before the Federal Maritime Commission on February 22, 1984, since resolved, to which Booz–Allen was not a party.

2. In reviewing this Court's dismissal of this action, the United States Court of Appeals for the District of Columbia Circuit certified a question of law on the negligence claims to the South Carolina Supreme Court. The state court held that Booz–Allen owed a duty of care to plaintiff SCSPA, but not to the other plaintiffs. *South Carolina State Ports Authority v. Booz–Allen & Hamilton, Inc.*, 346 S.E.2d 324, 289 S.C. 373 (1986).

The Court of Appeals then vacated this Court's order of dismissal as to SCSPA, affirmed it as to the other two plaintiffs, and vacated the denial of defendant's motion for leave to file a counterclaim against plaintiff for abuse of process. *South Carolina State Ports Authorty v. Booz–Allen & Hamilton, Inc.*, 795 F.2d 1085 (D.C.Cir. 1986).

3. *See supra* note 2. This Court's dismissal of the counts for libel and tortious interference, Memorandum Opinion, Nov. 7, 1984, at 11, were not disturbed on appeal. Recently, the Court granted plaintiff's motion to add a claim for punitive damages, denied plaintiff's request to add an antitrust count, and allowed defendant to assert a counterclaim. Order of June 24, 1987, at 2–3.

itself be entitled to seek damages for defamation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 291, 84 S.Ct. 710, 732, 11 L.Ed.2d 686 (1964); *City of Philadelphia v. The Washington Post Co.*, 482 F.Supp. 897, 898–99 (E.D.Pa.1979) (citing *The Mayor, Aldermen, and Citizens of Manchester v. Williams*, 1 Q.B. 94 (1891)). Characterizing this case as an end-run around the libel laws, however, is not accurate, as plaintiff in this action does not claim damage to its reputation, but rather actual economic harm resulting from the circulation of the allegedly false information in defendant's report.

In determining whether the South Carolina state law of negligence to be applied to this case withstands first amendment scrutiny, it is important to set forth the exact nature of that cause of action as articulated by the South Carolina Supreme Court:

> A cause of action for negligence requires: (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; (3) injury to the plaintiff resulting from the defendant's failure to perform. *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E.2d 142 (Ct.App.1985). See also, *Horne v. Beason*, 285 S.C. 518, 331 S.E.2d 342 (1985). . . .
>
> Liability for negligence in preparing reports has been extended to parties other than those to the contract in certain circumstances. 57 Am.Jur.2d, *Negligence*, Section 51. Consultants such as BAH may be found liable in negligence to noncontracting parties who have reasonably relied on their reports in taking some

action. See, *Stagen v. Stewart–West Coast Title Co.*, 149 Cal.App.3d 114, 196 Cal.Rptr. 732 (2d Dist.1983); *Carlotta v. T.R. Stark & Assoc., Inc.*, 57 Md.App. 467, 470 A.2d 838 (1984). We hold a duty to use due care, running from a consultant to the commercial competitor who is being critiqued, arises when the consultant undertakes to objectively analyze and compare the attributes of commercial competitors for the purpose of giving one a market advantage over the other. Under this analysis, BAH owed a duty to the S.C. State Ports Authority *to exercise due care to accurately report objective factual data concerning the Charleston port*, if it knew or should have known the report was intended to be used by GPA as a marketing device. *South Carolina State Ports Authority v. Booz–Allen & Hamilton, Inc.*, 346 S.E.2d 324, 324, 289 S.C. 373, 374 (1986) (emphasis added). Thus, the "speech" that South Carolina seeks "to regulate" is erroneous "objective factual data" resulting from negligent preparation.[4] The narrow contours of this cause of action significantly circumscribe the first amendment interests involved.[5]

The right to free speech is not absolute. The first amendment requires, however, that attempts by a state to regulate speech—either through direct legislation or recognition of a particular cause of action —must be scrutinized to insure that the proper constitutional balance is struck between free speech and the state's interest in restraining that speech. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 2944–45, 86 L.Ed.2d 593 (1985); *Central Hudson Gas*

---

**4.** For this very reason, *Demuth Development Corp. v. Merck & Co., Inc.*, 432 F.Supp. 990 (E.D.N.Y.1977), otherwise factually similar, is readily distinguishable. In that case, defendant published a toxicity index, which plaintiff alleged contained incorrect risk information for the chemical component of plaintiff's product, causing plaintiff to lose customers. The court's finding for defendant was based on the threshold issue that defendant *owed no duty* to the plaintiff. *Id.* at 992–93. The court's comment that defendant's right to publish "free of fear of liability is guaranteed by the First Amendment," *id.* at 993, was incidental to its analysis and

finding that plaintiff had no cause of action. In contrast, the highest court of the state whose law governs this action has expressly found in this case that SCSPA has a negligence cause of action against Booz–Allen.

**5.** This Court need not, and does not, reach the issue of whether speech beyond that at issue here, such as a report consisting of subjective opinion rather than "objective factual data" would require greater first amendment protection.

& Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 561, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980); Gertz v. Robert Welch, Inc., 418 U.S. 323, 343, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974); New York Times, 376 U.S. at 269, 84 S.Ct. at 720.

In balancing these interests, not all speech is to be accorded equal first amendment importance. Dun & Bradstreet, 105 S.Ct. at 2945. At the heart of the first amendment is speech on "matters of public concern." Id. at 2945 n. 5; see also Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (extending New York Times standard to public figures). Over the years, however, the protections of the first amendment has been extended, though to a lesser degree, to speech of even a purely commercial nature. Dun & Bradstreet, 105 S.Ct. at 2960–61; Central Hudson, 447 U.S. at 563, 100 S.Ct. at 2350; Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 759, 96 S.Ct. 1817, 1824, 48 L.Ed.2d 346 (1976).

When the speech at issue revolves around fact, not opinion, the first amendment concerns, though still existent, are diminished because "the greater objectivity and hardiness of commercial speech makes it less necessary to tolerate inaccurate statements for fear of silencing the speaker." Virginia Pharmacy, 425 U.S. at 771 n. 24, 96 S.Ct. at 1830 n. 24.[6] As Justice Stewart explained in his concurring opinion in Virginia Pharmacy, "[i]n contrast to the press, which must often attempt to assemble the true facts from sketchy and sometimes conflicting sources under the pressure of publication deadlines, the commercial advertiser generally knows the product or service he seeks to sell and is in a position to verify the accuracy of his factual representations before he disseminates them." Id. at 777, 96 S.Ct. at 1833. Although the cases in which the Supreme Court has analyzed the first amendment protection afforded to commercial speech have involved sellers and not consultants, the constitutional concerns are similar because both involve fact-based representations to potential purchasers. As the South Carolina Supreme Court stated, the speech complained about here is Booz–Allen's reporting of "objective factual data"[7] about products not its own, but made on behalf of a seller embarking on a marketing campaign.[8] During the course of preparing the independent analysis in the report, defendant itself stresses that it analyzed "voluminous quantities of data, maps, and charts." Defendant's Motion for Summary Judgment, at 4. Booz–Allen was thus in a position to verify the accuracy of its factual representations; indeed, that appeared to be one of its primary tasks.

The first amendment concerns here are not only diminished because of the type of speech at issue, but also because of the significant differences in the burdens of proof and presumptions operative in negli-

---

**6.** Cf. Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). In Bose, the Court found that a magazine article reviewing the sound quality of a plaintiff's speakers was within the broad protections of the first amendment because of the very subjective nature of that expression. The Court found that "adoption of the language chosen was 'one of a number of possible rational interpretations' of an event 'that bristled with ambiguities' and descriptive challenges for the writer." Id. at 512, 104 S.Ct. at 1966. In such cases, where it is difficult to separate "fact from fiction," the inevitable inaccuracy "commonplace in the forum of robust debate" is protected by liability without a showing of New York Times malice. Id. at 513, 104 S.Ct. at 1966.

**7.** Plaintiff alleges several types of factual errors in the Booz–Allen report, including (1) the ne-

cessity for vessels greater than 825 feet that call at the Charleston Port to back down the channel for seven miles rather than turn around, (2) the tides, (3) the depth of the river channels, (4) certain graphic displays, and (5) certain other operational and facility information.

Plaintiff asserts that defendant falsely represented these facts as a result of its failure to verify the information, conduct a visual inspection, and correct the report.

**8.** An element of the negligence cause of action formulated by the South Carolina Supreme Court was that defendant "knew or should have known the report was intended to be used by GPA as a marketing device." See supra p. 348. This issue, of course, remains for the trier of fact to determine.

gence compared to defamation cases. In a defamation suit, damages and punitives are presumed. *Gertz*, 418 U.S. at 349, 94 S.Ct. at 3011; *New York Times*, 376 U.S. at 267, 277, 84 S.Ct. at 719, 724; *Dun & Bradstreet*, 105 S.Ct. at 2946. In a negligence case, there is no such presumption; as the South Carolina Supreme Court stated, plaintiff must prove failure of defendant "to exercise due care to accurately report objective factual data concerning the Charleston port" and that injury resulted from this breach of duty. There is small risk here therefore of the "unrestrained and punitive damage awards" typical of defamation cases that are "designed to chill and not to compensate." *Dun & Bradstreet*, 105 S.Ct. at 2962 (Brennan, J., dissenting).[9]

There is also little concern that "regulation" by way of a negligence cause of action will chill such expression or diminish the free flow of commercial data.[10] While the report represents a professional product requiring the exercise of expertise and judgment, defendant will only be held liable for negligence if the jury finds that preparation fell below the standard of care, if this breach of duty caused factual misrepresentations, and if injury resulted. The fact-based expression exemplified by the Booz–Allen report should prove quite hardy against the "threat" of negligence actions.[11] Contrary to defendant's suggestion, the negligence standard does not require that the report be "error free," but

rather that due care be exercised to "the commercial competitor who is being critiqued" to reasonably minimize errors. The interests of speaker and state in this case are properly balanced by permitting the assertion of a cause of action in negligence allowing recovery of compensatory damages upon a showing of fault. *See Dun & Bradstreet*, 105 S.Ct. at 2965 (Brennan, J., dissenting).

Summary judgment is precluded for an additional reason. An essential factor in determining whether defendant's speech is protected by the first amendment is whether the statements made were in fact false. This issue cannot be resolved at this juncture, but remains a genuine issue of material fact for resolution at trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (all reasonable inferences are to be drawn in favor of nonmovant). Denying summary judgment does not deprive defendant of its first amendment rights. If the jury finds the statements to be false, then defendant loses no constitutional protection because it is entitled to none. *Central Hudson Gas*, 447 U.S. at 566, 100 S.Ct. at 2351 (for commercial speech to be protected, it must "concern lawful activity and not be misleading"); *Gertz*, 418 U.S. at 339–40, 94 S.Ct. at 3007 ("there is no such thing as a false idea.... But there is no constitutional value in false statements of fact"); *Bose Corp. v. Consumers Union of U.S., Inc.*,

**9.** Plaintiff's claim for punitive damages does not reopen the way to unrestrained awards because plaintiff bears a high burden of proof similar to the *New York Times* malice standard. *Hinds v. United Insurance Co. of America*, 248 S.C. 285, 149 S.E.2d 771 (1966); *Wannamaker v. Traywick*, 136 S.C. 21, 134 S.E. 234 (1926); *Tinsely v. Western Union Telegraph Co.*, 72 S.C. 350, 51 S.E. 913 (1905).

**10.** While the subject matter in this case involved the operation of public facilities and the flow of commerce, *Virginia Pharmacy*, 425 U.S. at 763, 764, 96 S.Ct. at 1826, 1827, the Court has held that first amendment interests of a speaker are diminished where circulation of the speech is limited and only a narrow range of private parties are interested in the speech. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 2947 86 L.Ed.2d 593 (1985) (credit report circulated to five subscribers "solely in the individual interest of speaker and its specific business audience"); *but see id.* 105 S.Ct. at 2954 (Brennan, J., dissenting) (credit report involves matters of significant public interest).

**11.** *See also Dun & Bradstreet*, 105 S.Ct. at 2947 ("the speech here [credit report] is hardy and unlikely to be deterred by incidental state regulation. It is solely motivated by the desire for profit, which, we have noted, is a force less likely to be deterred than others. Arguably, the reporting here was also more objectively verifiable than speech deserving of greater protection. In any case, the market provides a powerful incentive to a credit reporting agency to be accurate, since false credit reporting is of no use to creditors. Thus, any incremental 'chilling' effect of libel suits would be of decreased significance.")

466 U.S. 485, 504 n. 22, 104 S.Ct. 1949, 1961 n. 22, 80 L.Ed.2d 502 (1984); *Virginia Pharmacy,* 425 U.S. at 771–72, 96 S.Ct. at 1830 ("Untruthful speech commercial or otherwise has never been protected for its own sake"); *In re R.M.J.,* 455 U.S. 191, 200, 102 S.Ct. 929, 936, 71 L.Ed.2d 64 (1982) ("False, deceptive or misleading advertising remains subject to restraint"). On the other hand, if the jury does not find the statements to be false, it cannot find defendant negligent because the South Carolina State Supreme Court's definition of the negligence cause of action in this case is specifically predicated upon a finding of falsity.

### III. Conclusion

In conclusion, after balancing the free speech concerns of the first amendment with the state's interest in allowing plaintiff to proceed on a negligence theory to recover damages for false facts contained in the defendant consultant's report, the Court concludes that the rule of law articulated by the South Carolina State Supreme Court passes first amendment scrutiny. There is no constitutional obstacle to plaintiff's presentation of its case to the jury. Accordingly, defendant's motion for summary judgment be and it hereby is denied.

The jury trial, estimated for ten days, shall commence as scheduled on January 19, 1988 at 10:00 a.m.

IT IS SO ORDERED.