Marjorie A. **EIMANN,** Individually, as Next Friend of Gary Wayne Black, and as Representative of the Estate of Sandra Kay Black, Deceased, and Glenn G. Eimann, Plaintiffs,

v.

**SOLDIER OF FORTUNE MAGAZINE, INC., and Omega Group, Ltd., Defendants.**

Civ. A. No. H–87–0030.

United States District Court, S.D. Texas, Houston Division.

March 8, 1988.

Ronald G. Franklin, Graham Hill, Hill, Parker, Franklin, Cardwell & Jones, Houston, Tex., for plaintiffs.

Larry D. Thompson, Lorance & Thompson, Houston, Tex., Robert M. Callagy, Satterlee, Stephens, Burke & Burke, New York City, Robert B. Miller, Miller, Hale & Harrison, Boulder, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

HITTNER, District Judge.

This is a wrongful death and survival action. Plaintiffs Marjorie A. Eimann and Gary Wayne Black are suing in their capacity as the mother and son of the deceased, Sandra Black. Former Plaintiff Glenn G. Eimann, father of the deceased, has non-suited.

In 1984, Defendant Soldier of Fortune ran personal services advertisements which Plaintiffs allege were thinly veiled offers of the services of hit men. John Wayne Hearn placed one of the ads. The ad read as follows:

> EX-MARINES—67–69 'Nam vets—ex-DI-weapons specialist—jungle warfare, pilot, M.E., high risk assignments U.S. or overseas. (404)991–2684.

Robert Black, Jr., contacted Hearn through the advertisement, and, eventually, arrangements were made for Hearn to murder Black's wife Sandra. Hearn murdered Sandra Black on February 21, 1985.

Plaintiffs allege that Defendants Soldier of Fortune Magazine, Inc., and Omega Group, Ltd., were negligent in publishing the advertisement and in failing to investigate the nature of the ad. Soldier of Fortune and Omega seek dismissal of Plaintiffs' suit or summary judgment in their favor on three grounds:

(1) The first amendment's protection of commercial speech prohibits the imposition of liability upon the publisher for the publication of the ad.

(2) The publisher owed no duty of care to Plaintiffs.

(3) The injuries resulted solely from the intervening intentional criminal acts of third persons and, therefore, as a matter of law, were unforeseeable.

This Court concludes that neither dismissal nor summary judgment is appropriate in this case for the reasons set forth below.

### A. First Amendment Protection

Defendants assert that, by virtue of the protection of the first amendment of the

United States Constitution, they cannot be held liable for the consequences of the publication of the Hearn advertisement. Defendants concede that the advertisement forming the basis of this suit is commercial speech.[1] Defendants further concede that if the ad in question expressly proposed unlawful activity, it would enjoy no first amendment protection. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). Defendants maintain, however, that because the ad in question does not expressly propose illegal conduct on its face, it does not fall within the "unlawful activity" exception; it therefore constitutes protected speech, thus foreclosing a negligence action based on its publication. This Court disagrees. To accept Defendants' contention would afford to commercial speech a broader protection than that given to core speech.[2]

It is axiomatic that commercial speech, although enjoying some degree of first amendment protection, is not entitled the stringent protection afforded to core speech. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 505–07, 101 S.Ct. 2882, 2891–92, 69 L.Ed.2d 800 (1981); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 69 n. 32, 96 S.Ct. 2440, 2452 n. 32, 49 L.Ed.2d 310 (1976). Even when the cause of injury is core speech, a simple negligence action is permitted for libel and slander provided the plaintiff is not a public figure. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345–47, 94 S.Ct. 2997, 3009–10, 41 L.Ed.2d 789 (1974). The Court should not foreclose a negligence action allowing recovery for the foreseeable results of the publishing of commercial speech when a negligence action is not foreclosed for the publication of allegedly libelous core speech. The Supreme Court has emphasized that " '[t]he publisher of a newspaper has no special immunity from the application of general laws.' " *Branzburg v. Hayes,* 408 U.S. 665, 683, 92 S.Ct. 2646, 2657–58, 33 L.Ed.2d 626 (1972) (citing *Associated Press v. NLRB,* 301 U.S. 103, 132, 57 S.Ct. 650, 655–56, 81 L.Ed. 953 (1937)).

A consideration of whether an advertisement on its face advocates unlawful conduct is only relevant in determining whether the commercial speech at issue is subject to regulation or outright prohibition. In the instant case, Plaintiffs do not seek to regulate commercial speech but only to recover damages for negligent publication. In such a case, the Court must balance the free speech concerns of the first amendment against the interest in allowing a plaintiff to proceed on a negligence theory. At least three courts have held that first amendment concerns do not preclude a negligence action where commercial speech is at issue. *South Carolina State Ports Authority v. Booz–Allen & Hamilton, Inc.,* 676 F.Supp. 346 (D.D.C. 1987); *Norwood v. Soldier of Fortune Magazine, Inc.,* 651 F.Supp. 1397, 1398–1402 (W.D.Ark.1987); *Weirum v. RKO Gen., Inc.,* 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36, 40 (1975). This Court agrees that "[t]he First Amendment does not sanction the infliction of physical injury merely because achieved by word, rather than act." *Weirum,* 539 P.2d at 40.

Defendants take issue with this position and argue that "the imposition of civil responsibility for damages would have an impact upon and indeed, act as a restraint on the defendants' exercise of their asserted first amendment rights." *Zamora v. Columbia Broadcasting Sys.,* 480 F.Supp. 199, 203 (S.D.Fla.1979). The Court is mindful of the concern for the potential effect on the free expression of thought and thus

---

1. Commercial speech is speech related solely to the economic interest of the speaker and his audience, *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2348–49, 65 L.Ed.2d 341 (1980), and does no more than propose a commercial transaction. *Id.* at 562. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558–59, 37 L.Ed.2d 669 (1973).

2. Core speech is that which contains "[i]deological expression" and is "integrally related to the exposition of thought." *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 779, 96 S.Ct. 1817, 1834, 48 L.Ed.2d 346 (1976) (Stewart, J., concurring).

emphasizes the narrowness of its holding in this case.

First, the Court's holding is meant to apply only to the effects of commercial speech and not to those of core speech. The compelling interest in protecting the right of the public to receive ideas dictates that first amendment protection of core speech should not be eliminated simply because the publication of an idea creates a potential hazard.[3]  *Herceg v. Hustler Magazine, Inc.,* 814 F.2d 1017, 1020 (5th Cir. 1987).  Rather, the public is sufficiently protected from dangerous core speech by the elimination of protection of that speech when it incites imminent lawless activity and is likely to produce such activity. *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969); *see, e.g., Herceg v. Hustler Magazine, Inc.,* 814 F.2d at 1022.  In contrast, there can be "little concern that 'regulation' by way of a negligence cause of action will chill ... expression or diminish the free flow of commercial [speech]."  *South Carolina State Ports Authority, supra* at 350.

Further, this Court's decision is not intended to place upon every publisher an undue burden of investigation into the nature of every advertisement submitted for publication.  It is intended only to permit a cause of action for negligence; the standard of reasonable care governs the degree to which investigation is required.  The publication, without investigation, of the advertisement that is the subject of this suit in a city newspaper of general circulation in all likelihood would not be unreasonable.  The reasonableness of its publication in Defendants' magazine without investigation, however, is not clear given the nature of the magazine and its readership and given the fact that many advertisements submitted for publication in the personal services column expressly offered criminal services.  The issue of the reasonableness of publication in the instant case, thus, presents a genuine question of material fact for the jury.

### B. *Legal Duty*

■  Defendants contend that even if a negligence action is not precluded by first amendment protection, such an action cannot be maintained because Defendants had no duty of reasonable care toward Plaintiffs since there was no special relationship involved.  Defendants cannot prevail in this argument.  Even absent a special relationship, there is a general duty to act as a reasonable person would act under the same or similar circumstances considering the reasonably foreseeable risk or probability of injury to persons similarly situated as the Plaintiffs.  *Group Hosp. Servs., Inc. v. Daniel,* 704 S.W.2d 870, 877 (Tex.App.—Corpus Christi 1985, no writ).  Again, the issue of whether, under the circumstances of this case, Defendant acted reasonably in publishing the advertisement is a question for the jury.

### C. *Foreseeability*

■  Finally, Defendants contend that Plaintiffs cannot maintain a negligence cause of action because the injuries resulting from the intervening intentional criminal acts of John Wayne Hearn and Robert Black severed the causal link between Defendants' alleged negligence and Plaintiffs' decedent's death.  A defendant's negligence will not, however, be excused by an intervening criminal act when that criminal conduct is a foreseeable result of the defendant's negligence.  *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313–14 (Tex.1987); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985).  The determination of the foreseeability of intervening criminal conduct rests with the jury. *El Chico, supra* at 314.  Plaintiffs have produced some evidence that Soldier of Fortune has, in the past, published advertisements expressly offering criminal services.  Hearn has testified in deposition that he estimated that 90 percent of the calls he received in response to his ad in-

---

**3.**  The protection of the free flow of ideas is such a compelling interest that, even if core speech at issue results in the intentional infliction of emotional distress, it is protected by the first amendment when it concerns a public figure and is not libelous.  *Hustler Magazine v. Falwell,* —— U.S. ——, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

quired about illegal activities. He further testified that he received three to five calls per day from persons wanting him to murder for hire. In light of that evidence, an issue of material fact has been raised as to whether Defendants knew or should have known of the nature of the advertisement and, thus, should have foreseen the likelihood that criminal conduct would ensue.

### D. *Conclusion*

In conclusion, this Court holds that Plaintiffs' negligence action is not foreclosed by first amendment concerns. Neither is it barred because of an absence of duty to the Plaintiffs. Finally, the Court concludes that the causal connection between Defendants' alleged negligence and Plaintiffs' injury is not necessarily, as a matter of law, severed by intervening criminal conduct. It is therefore

ORDERED that Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment be, and is hereby, DENIED.